UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

RECEIVED
USDC, CLERK, CHARLESTON, SC

2008 MAR 24  A 10: 03

| | |
|---|---|
| David A. Bardes, individually, as a taxpayer, and as next friend of his two minor children, D.A.B. and A.P.B., | ) C/A No. 2:08-487-PMD-RSC ) ) ) |
| Plaintiff(s), | ) ) ) |
| vs. | ) ) ) |
| John M. Magera, Attorney for SCDSS; The State of South Carolina; Charleston County, vis-a-vis the County Council of Charleston; McRoy Canterbury, Jr., Admin., Charleston County; Kathleen M. Hayes, Director, SCDSS; Odessa Williams, Charleston County DSS, Director; James A. Cannon, Jr., Sheriff of Charleston County; Correct Care Solutions, LLC; The Hon. R. Wright Turbeville; The Hon. Jocelyn B. Cate; The Hon. Paul W. Garfinkel; Julie J. Armstrong, Clerk of Court, Charleston County; Wishart Norris Henninger & Pittman, P.A.; and Wade Harrison, Esq., all individually, and in their official capacities, | ) ) ) ) ) Report and Recommendation ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendant(s). | |

This matter has been filed by a plaintiff who is proceeding *pro se*. He alleges this court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 1983 because his Constitutional rights have been violated. The plaintiff also alleges violations of other federal statutes and raises pendant state law claims. He has named as defendants a state attorney (Magera) employed by the South

1

Carolina Department of Social Services (SCDSS); the State of South Carolina; Charleston County; the Charleston County Council; the Administrator for Charleston County (Canterbury); the Director of the SCDSS (Hayes); the Director (Williams) of the Charleston County Department of Social Services (CCDSS); the Sheriff of Charleston County (Cannon); Correct Care, LLC; three South Carolina family court judges (Turbeville, Cate, Garfinkel); the Clerk of Court for Charleston County (Armstrong); a Professional Association (Wishart, Norris, Henniger, and Pittman); and an attorney (Harrison).

## BACKGROUND

This matter arises out of a South Carolina family court case wherein plaintiff was told he was in arrears for the support of his two minor children. Plaintiff alleges he and his [then] wife divorced in the state of Pennsylvania. He was directed to pay child support directly to her. Plaintiff's ex-wife was granted primary placement by the Pennsylvania court, and she moved to Charleston, South Carolina with the two minor children. Plaintiff subsequently moved to Charleston to be closer to his children.

Plaintiff alleges he was served in January 2004 with a South Carolina "notice of Gross Arrears, a Notice of Registration of the Foreign Support Order for Enforcement, a notice of a scheduled hearing to contest arrears, and a 20-day notice to contest foreign registration." Complaint @ 8. Plaintiff requested a hearing to contest the registration of the foreign support order. According

2

to the plaintiff, Magera "intercepted and/or never filed the motion to contest registration". Id. @ 12.

Plaintiff further claims that he was threatened, coerced, and ordered to make all future child support payments through the Charleston County Courts. Plaintiff made the payments through the County Court but was still held in arrears. Plaintiff was advised by the SCDSS, apparently by mail,[1] that they would seize his assets, revoke his licenses and passports, and destroy his credit history. Plaintiff alleges his creditors began calling and his business credit rating [plaintiff was self-employed at the time] was "shut down". Plaintiff indicates his situation led him to become depressed, anxious, and fearful. Additionally, plaintiff's vehicle and a recreational vehicle (RV) were repossessed. Magera eventually had plaintiff's "'false arrears' zero balanced" in October 2004, but plaintiff was not given credit for the overpayments he claims he made. Plaintiff alleges that Magera violated plaintiff's First, Fourth, Fifth, Seventh, Eighth, Ninth, and Fourteenth Amendment rights.

Plaintiff also alleges he is paying more than the South Carolina guidelines require him to pay. The plaintiff indicates he is unable to pay an attorney to take the matter back into court. Plaintiff's last payment to the Charleston County Clerk of Court

---

[1] Plaintiff refers to this correspondence as "DSS Destroy letters".

3

was made in August 2004, the same month Plaintiff's ex-wife and the minor children moved to North Carolina.

The Pennsylvania support order was registered in North Carolina for enforcement once his ex-wife moved to that state. Plaintiff found employment in North Carolina but the company eventually went out of business. Plaintiff was found in gross arrears by a North Carolina family court, and was under "such a strain that he suffered from a five-day period of 'depressive coma' and nearly died." Id. @ 19.[2]

Plaintiff states he was unable to find any other employment in North Carolina and moved back to Clarendon County in South Carolina in December 2004. The plaintiff sold his last remaining asset and rented a single-wide trailer. Plaintiff claims he was mentally disabled with severe depression. He was unable to find work due to his poor credit rating, and also due to the fact that plaintiff's resume showed he once was earning $180,000.00 a year. Plaintiff alleges employers did not want to hire someone who once worked at the World Trade Center but was applying for a temporary job at the local library.

Eventually Plaintiff was served with papers requiring him to attend "Order to Show Cause" hearings in both North and South Carolina. Plaintiff alleges he attended both hearings. Since

---

[2]

Additionally, the Pennsylvania family court also believed plaintiff was in arrears. Plaintiff alleges the Pennsylvania court had no records of enforcement from either North or South Carolina.

plaintiff had previously received a "zero balance" from the State of South Carolina, but was not given credit for his overpayments, plaintiff alleges he began to accrue actual arrears based on an income level he no longer had, and had not had, since he lived in Pennsylvania. Plaintiff claims the North Carolina court set the matter aside until South Carolina had ruled on its Order to Show Cause.

Plaintiff requested a hearing in the South Carolina family court but was denied a jury trial. Plaintiff alleges this is a violation of his Constitutional rights by the family court judge. Nonetheless, he received a hearing in front of a South Carolina family court judge in October 2005. According to the complaint, Magera explained to the Court that the Pennsylvania support order was initially registered in South Carolina in January 2004. Magera told the court that, at that time, the plaintiff filed a late objection to the registration but the matter was allowed to be heard. The arrearage was struck at that hearing, however, plaintiff was now currently in arrears for a total of $29,762.70. The motion to contest the registration was apparently never heard. Magera said that because the arrearage had been set aside there was "no issue" as it pertained to registration. Magera therefore asked that the motion to contest registration should be dismissed and asked that a bench warrant be issued for failure to pay, with an order that plaintiff pay through the Court.

5

According to the complaint, the judge ordered the SCDSS to obtain plaintiff's medical records and work out a solution with him.  When the order from the October 2005 hearing was entered it showed that the family court judge had ruled that plaintiff had agreed that he had a duty to support his children, however, the judge was unsure if plaintiff was able to do so.  Plaintiff was ordered to sign a release so the SCDSS could obtain his medical records, including any psychological evaluations that were available.

Plaintiff alleges that Magera made verbal threats on his life after the hearing.  Plaintiff had attended the hearing with a friend of his, and, upon returning to Clarendon County, the friend arranged for a four (4) day intensive clinic in Orlando to help the plaintiff but plaintiff alleges he continued to fear for his life. The plaintiff indicates he phoned the Governor, the State Attorney General, and [then] Solicitor Hosington to report "the crime of harassment and stalking, but the calls were never returned."

Plaintiff scheduled a meeting with his psychiatrist when he received the release forms in the mail. The psychiatrist stated it was highly unusual to send a blanket request and he said he could not fill out the form without knowing what the SCDSS wanted. Nonetheless, plaintiff complied with the court order and signed the releases.

Plaintiff challenges the order from the court hearing

6

indicating that he did, in fact, contest the registration. Plaintiff agrees that there was to be a determination, after all medical records were received, as to plaintiff's ability to pay child support. Plaintiff states that no meeting took place between himself and the SCDSS. Plaintiff further alleges Magera intentionally set another Rule to Show Cause hearing and conspired with the family court judge to kill the plaintiff. Plaintiff contacted the Department of Justice in Washington, D.C., who put him in touch with the Federal Bureau of Investigations (FBI). The plaintiff alleges he faxed information to the FBI but he did not receive any assistance. He also sent a copy of the same information to the Director of the FBI.

Another family court hearing took place in April 2006 where plaintiff was sentenced to six (6) months in jail for failure to pay child support. Plaintiff alleges he was locked in a "cold cell" located off the main booking area. According to the complaint, the cell has a large refrigeration vent located near the ceiling above the entrance door, and a "booster fan" was located behind the vent to blow "super chilled" air into the cell. Plaintiff states he was locked in the "cold cell" for three days without water, food, bedding, blankets, or the necessary clothing to protect him against hypothermia. His repeated requests for a jacket were denied. Plaintiff then states:

> "Within approximately 8-12 hours Plaintiff had fallen into stage 3 hypothermic shock; Plaintiff had informed a

7

Jailer-Defendant that Plaintiff was hypothermic by stating that his body was unable to shiver to keep itself with heat. Plaintiff asked the Jailer-Defendant to notify the nurse. The Jailer-Defendant replied, 'I will do no such thing.'

Plaintiff suffered tremendous pain, slow loss of use of limbs, violent shivering, painful muscle stiffening, the horror and fright that death was imminent, and the realization that Defendant Magera and Defendant Garfinkel planned his death so quickly and by means of severe hypothermia leading to death by heart failure or brain death, whichever came first.

Within approximately 8-12 hours, Plaintiff's brain began to shut down and Plaintiff suffered increasing memory loss until he lost all thought and lost consciousness. Plaintiff slipped into an unconscious hypothermic coma. Plaintiff believed he died."

Complaint @ 97. Plaintiff was removed after the third day and placed on a mat with a blanket by some prison guards.

A subsequent guard shift was unaware of plaintiff's predicament and beat him because he was unable to stand, move his limbs, or recite his name. Plaintiff claims that the guards soon realized something was wrong and took him to the jail's hospital where he was placed on suicide watch. Plaintiff alleges that he was "wracked with agonizing pain and was suffering from ventricular tachacardia" as his body warmed.

According to the plaintiff, the next day the doctor "realized that [plaintiff] was still in danger but refused to provide him with medical treatment, leaving him on the floor of the suicide watch room for six (6) days without a blanket. Plaintiff alleges the guards were engaged in a conspiracy to commit murder, or

8

involuntary manslaughter. Plaintiff also claims that the "jailer-defendants" violated state law by not providing him with a blanket. He also maintains this was a violation of his Eighth and Fourteenth Amendment rights and he says that Magera "attempted murder via sever hypothermia in the Charleston County Jail".

Plaintiff spent seventy-three (73) days in the Charleston County jail. He retained the services of an attorney to secure his release. Plaintiff alleges there were four (4) conditions to his release. First, that the plaintiff would not sue anyone having to do with the family court case. Second, that the plaintiff would admit he owed child support in arrears and would reduce the balance by half. Third, that the plaintiff would seek medical help. The plaintiff also claims the fourth condition was that he was expected to leave the state although this was "not put in writing." Plaintiff's father paid $20,000.00 to the Court. The jail psychologist and the plaintiff's personal psychologist agreed plaintiff did not need further treatment. The agreement was sent to the plaintiff at the jail, and plaintiff alleges he signed it under duress. Plaintiff also alleges the written agreement is "void on several accounts." He maintains the state of South Carolina does not have jurisdiction over him and never did. Additionally, plaintiff alleges he was not competent to enter into a contract at that time.

Currently, there appears to be a pending state court case

9

brought in North Carolina against the plaintiff by his ex-wife for outstanding child support payments. According to the complaint, plaintiff's ex-wife has retained the firm of Wishart Norris Henninger & Pittman. Wade Harrison is an attorney with this firm and represents plaintiff's ex-wife in the proceedings.

Plaintiff has written an approximately one hundred and fifty (150) page book entitled "*The Public Trust: Statement of Fact*" which he says is the official testimony and evidence for this case, and which he has attached to his complaint. He raises multiple counts in his complaint which include, but are not limited to, a federal racketeering claim (commonly called RICO) Section 1983 claims, unjust enrichment, breach of fiduciary duty, fraud, and extortion. He seeks damages and injunctive and declaratory relief.

## STANDARD OF REVIEW

Under established local procedure in this judicial district, a careful review has been made of the *pro se* complaint pursuant to the procedural provisions of 28 U.S.C. § 1915, 28 U.S.C. § 1915A, and the Prison Litigation Reform Act. The review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983); and *Boyce v. Alizaduh*, 595 F.2d 948 (4th Cir. 1979). *Pro se* complaints

10

are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); and *Cruz v. Beto*, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint the plaintiff's allegations are assumed to be true. *Fine v. City of N. Y.*, 529 F.2d 70, 74 (2nd Cir. 1975). However, even under this less stringent standard, the complaint submitted in the above-captioned case is subject to summary dismissal. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Department of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

## DISCUSSION

### I. *Claims brought on behalf of the minor children*

As an initial matter, the Court notes that plaintiff has listed himself as a plaintiff, both on his own behalf and as "next friend of his two minor children DAB and APB." The federal courts have consistently rejected attempts at third-party lay representation." *Herrera-Venegas v. Sanchez-Rivera*, 681 F. 2d 41, 42 (1st Cir. 1982). Specifically, a non-attorney parent representing himself or herself in a federal court action is

11

prohibited from representing his or her minor children. *See Cheung v. Youth Orchestra Foundation*, 906 F.2d 59, 61 (2nd Cir. 1990); *Johns v. County of San Diego*, 114 F. 3d 874, 876 (9th Cir. 1997); *Meeker v. Kercher*, 782 F.2d 153 (10th Cir. 1986); *Deving v. Indian River County School Bd.*, 121 F. 3d 576, 582 (11th Cir. 1997); *see also Wenger v. Canastota Cent. Sch. Dist.*, 146 F.3d 123, 124-5 (2d Cir. 1998)[relying on the common-law rule against non-attorney parents representing their children *pro se* in civil suits]; and *Gallo v. USA*, 331 F. Supp. 2d 446 (E.D.Va.2004)(mother may not represent daughter *pro se* but must retain lawyer).

The prohibition of *pro se* parents representing minor children exists to protect the rights of minor children, who cannot represent themselves in court, because parents unskilled in the law are not likely to adequately protect a child's rights in pursuing litigation on the child's behalf. *See Brown v. Ortho Diagnostic Systems, Inc.*, 868 F. Supp. 168 (E.D. Va. 1994). Consequently, since the father of the minor children is attempting to represent the children, it is recommended that all claims brought on behalf of the minor children be dismissed, and that the minors be dismissed as plaintiffs to this action.

II. *Claims raised by the plaintiff on his own behalf*

    A. *Rooker-Feldman*

The South Carolina family court is a court in the State of South Carolina's unified judicial system. *See* Article V, Section

1 of the Constitution of the State of South Carolina ("The judicial power shall be vested in a unified judicial system, which shall include a Supreme Court, a Court of Appeals, a Circuit Court, and such other courts of uniform jurisdiction as may be provided for by general law."); *City of Pickens v. Schmitz*, 376 S.E.2d 271, 272 (1989); *Spartanburg County Dept. of Social Services v. Padgett*, 370 S.E.2d 872, 875-876 & n. 1 (1988); and *Cort Industries Corp. v. Swirl, Inc.*, 213 S.E.2d 445, 446 (1975).

Longstanding precedents preclude the United States District Court for the District of South Carolina from reviewing the findings or rulings made by state courts. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983), where the Supreme Court of the United States held that a federal district court lacks authority to review final determinations of state or local courts because such review can only be conducted by the Supreme Court of the United States under 28 U.S.C. § 1257. *See also Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). This prohibition on review of state court proceedings or judgments by federal district courts is commonly referred to as the *Rooker-Feldman* doctrine or the *Feldman-Rooker* doctrine. *See, e.g., Ivy Club v. Edwards*, 943 F.2d 270, 284 (3rd Cir. 1991). The *Rooker-Feldman* doctrine applies even when a challenge to a state court decision concerns a federal constitutional issue. *District of Columbia Court of Appeals v. Feldman, supra*, 460 U.S. at 484-486,

13

and *Arthur v. Supreme Court of Iowa*, 709 F. Supp. 157, 160 (S.D.Iowa 1989). The *Rooker-Feldman* doctrine also applies even if the state court litigation has not reached a State's highest court. *Worldwide Church of God v. McNair*, 805 F.2d 888, 893 & nn. 3-4 (9th Cir. 1986). *See also* 28 U.S.C. § 1738 (federal court must accord full faith and credit to state court judgment); and *Robart Wood & Wire Products v. Namaco Industries, Inc.*, 797 F.2d 176, 178 (4th Cir. 1986).

Thus, the plaintiff may not use a civil rights action to challenge the determinations or rulings of state courts. *See Anderson v. Colorado*, 793 F.2d 262, 263 (10th Cir. 1986)("[I]t is well settled that federal district courts are without authority to review state court judgments where the relief sought is in the nature of appellate review."); and *Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986), where a *pro se* plaintiff brought a § 1983 action against his ex-wife, her attorney, and the judge who presided over the divorce action. The United States Court of Appeals for the Fifth Circuit held that characterization of a suit as a civil rights action is ineffective to defeat the well-settled rule that litigants may not obtain review of state court actions by filing complaints in lower federal courts "cast in the form" of civil rights suits. *See also Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981); and *Gurley v. Superior Court of Mecklenburg County*, 411 F.2d 586, 587-588 & nn. 2-4 (4th Cir. 1969)(holding

14

that federal district courts and United States Courts of Appeals have no appellate or supervisory authority over state courts). *Accord Hagerty v. Succession of Clement*, 749 F.2d 217, 219-220 (5th Cir. 1984)(collecting cases); *Kansas Association of Public Employees v. Kansas*, 737 F. Supp. 1153, 1154 (D.Kan. 1990).

This principle was recently reaffirmed in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 125 S. Ct. 1517, 161 L.Ed.2d 454 (2005)(*Rooker-Feldman* doctrine applies only when the loser in state court suit files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself). *See also Davani v. Virginia Dept. of Transp.*, 434 F.3d 712 (4th Cir. 2006).

Applying these recent holdings to the above-captioned matter, the plaintiff, who was not successful in his state court suit, has now filed suit in federal district court seeking redress for injuries allegedly caused by the state court's decision itself. Thus, plaintiff's claim is barred by the *Rooker -Feldman* doctrine.

Plaintiff alleges the South Carolina family court incorrectly found him in arrears for the monetary support of his two minor children. The allegations which plaintiff raises, outlined in detail above, stem from the state court rulings that plaintiff was in arrears for child support payments and was therefore ordered to pay the arrearage through the court system, or be confined in the county jail for his failure to do so. In short, the complaint

expresses dissatisfaction with the judges' rulings. Clearly then, the *Rooker-Feldman* doctrine bars this Court from addressing the issues raised by the plaintiff.

B. *Prosecutorial immunity*

Moreover, to the extent the plaintiff seeks damages for alleged "unjust incarceration" based on alleged acts of defendant Magera, plaintiff's complaint is barred by the well-established legal doctrine of prosecutorial immunity. This type of immunity is available to individuals who have engaged in prosecution-related activities connected with judicial proceedings.

The United States Supreme Court has recognized that immunity is available to protect "the prosecutor when serving as an advocate in judicial proceedings." *Kalina v. Fletcher*, 522 U.S. 118, 125 (1997). In some circumstances, prosecutorial immunity is extended to agency officials who perform prosecutorial functions. *See Butz v. Economou*, 438 U.S. 478, 515 (1978). Indeed, State officials and agency employees have been afforded immunity for actions taken with a prosecutorial function in child welfare and support actions. *See, eg. Babcock v. Tyler*, 884 F.2d 497, 501-03 (9th Cir. 1989); *Malachowski v. City of Keene*, 787 F.2d 704, 710 (1st Cir. 1986); and *Wagner v. Genesee County Bd. Of Comm'rs*, 607 F. Supp. 1158, 1164 (E.D. Mich. 1985). This includes actions taken while in a court - such as the presentation of legal argument - as well as selected out of court conduct "intimately associated with the judicial

16

phases" of a court case. *See Fry v. Melarangno*, 939 F.2d 832, 838 (9th Cir. 1991). Therefore, defendant Magera is entitled to summary dismissal.

C. *Color of Law*

Additionally, plaintiff can not proceed against Harrison, or the law firm he belongs to, Wishart, Norris, Henniger, and Pittman. This firm currently represents plaintiff's ex-wife in a state court proceeding filed against the plaintiff in the State of North Carolina. Harrison, however, has not acted under color of state law. In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that: *(1)* the defendant(s) deprived him or her of a federal right, and *(2)* did so under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). An attorney, whether retained, court-appointed, or a public defender, does not act under color of state law, which is a jurisdictional prerequisite for any civil action brought under 42 U.S.C. § 1983. *See Deas v. Potts*, 547 F.2d 800 (4th Cir. 1976)(private attorney); *Hall v. Quillen*, 631 F.2d 1154, 1155-1156 & nn. 2-3 (4th Cir. 1980)(court-appointed attorney); and *Polk County v. Dodson*, 454 U.S. 312, 317-324 & nn. 8-16 (1981)(public defender).

The district court in *Hall v. Quillen*, *supra*, had disposed of the case against a physician and a court-appointed attorney on grounds of immunity. In affirming the district court's order, the Court of Appeals, however, indicated that lower courts should first

17

determine whether state action occurred:

> But immunity as a defense only becomes a relevant issue in a case such as this if the court has already determined affirmatively that the action of the defendant represented state action. This is so because state action is an essential preliminary condition to § 1983 jurisdiction, and a failure to find state action disposes of such an action adversely to the plaintiff.

*Hall v. Quillen*, 631 F.2d at 1155 (citations omitted). *See also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982)("Careful adherence to the 'state action' requirement . . . also avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.").

### D. *Eleventh Amendment Immunity*

Furthermore, the Eleventh Amendment to the United States Constitution divests this court of jurisdiction to entertain a suit brought against the State of South Carolina or its integral parts.[3] See *Alden v. Maine*, 527 U.S. 706, 713, 144 L. Ed. 2d 636, 119 S. Ct. 2240 (1999)(immunity "is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today...except as altered by the plan of the Convention or certain constitutional Amendments."); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55-56, 116 S. Ct.

---

[3]

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

18

1114, 134 L.Ed.2d 252 (1996); *Principality of Monaco v. Mississippi*, 292 U.S. 313, 322-323, 54 S. Ct. 745, 78 L.Ed. 1282 (1934); and *Blatchford v. Native Village of Noatak and Circle Village*, 501 U.S. 775, 111 S. Ct. 2578, 115 L.Ed.2d 686 (1991). *See also Federal Maritime Commission v. South Carolina State Ports Authority, et. al.*, 535 U.S. 743, 743, 122 S. Ct 1864, 152 L.Ed.2d 962 (2002)(state sovereign immunity precluded Federal Maritime Commission from adjudicating a private party's complaint against a non-consenting State). Although the language of the Eleventh Amendment does not explicitly prohibit a citizen of a state from suing his own state in federal court, the Supreme Court in *Hans v. Louisiana*, 134 U.S. 1 (1889), held that the purposes of the Eleventh Amendment, *i.e.*, protection of a state treasury, would not be served if a state could be sued by its citizens in federal court. Thus, the Eleventh Amendment bars such suits unless the State has waived it's immunity[4] or unless Congress has exercised its power under § 5 of the Fourteenth Amendment to override that immunity. When §1983 was passed as part of the Civil Rights Act of 1871, Congress did not interject any language in the Act which

---

[4]

The State of South Carolina has not consented to suit in a federal court. *See* S. C. Code Ann. § 15-78-20(e)(1976) which expressly provides that the State of South Carolina does not waive Eleventh Amendment immunity, consents to suit only in a court of the State of South Carolina, and does not consent to suit in a federal court or in a court of another State.

would specifically override the immunity of the states provided by the Eleventh Amendment. Consequently, a claim brought pursuant to 42 U.S.C. §1983 does not override the Eleventh Amendment. *See Quern v. Jordan*, 440 U.S. 332, 343 (1979). Therefore, the State of South Carolina and the South Carolina Department of Social Services[5] must be dismissed as parties to this action.

E. *Defendants Hayes, Williams, Canterbury, and Correct Care Solutions, LLC*

The plaintiff has sued Hayes, Williams, Canterbury, and Correct Care Solutions, LLC, however, there are no allegations in the complaint that these individuals were involved with the family court hearings. In fact, it is not clear from the allegations why these individuals were named. Consequently, the plaintiff has failed to state a claim upon which relief may be granted as to these defendants.

F. *The Clerk of Court*

County Clerks of Court, though elected by the voters of a County, are also part of the State of South Carolina's unified judicial system. *See* S.C. Const. Article V, § 24; § 14-1-40, South Carolina Code of Laws (as amended); and § 14-17-10, South Carolina Code of Laws (as amended). In the above-captioned case, the Clerk of Court for Charleston County has quasi-judicial immunity because

---

[5]

SCDSS is not named in the caption of the complaint, however, the plaintiff refers to the agency in the body of his initial pleading.

the plaintiff's allegations show that the defendant was following rules of a Court, or was acting pursuant to authority delegated by a court to Clerk's Office personnel. *See Cook v. Smith*, 812 F. Supp. 561, 562 (E.D.Pa. 1993); and *Mourat v. Common Pleas Court of Lehigh County*, 515 F. Supp. 1074, 1076 (E.D.Pa. 1981). In *Mourat v. Common Pleas Court of Lehigh County*, the district court, in a ruling from the bench, rejected claims similar to those raised by the *pro se* plaintiff in the case *sub judice*:

> The clerk, Joseph Joseph, is also immune from suit. In the "recognized immunity enjoyed by judicial and quasi-judicial officers, including prothonotaries, there exists an equally well-grounded principle that any public official acting pursuant to court order is also immune." We have here quoted from *Lockhart v. Hoenstine*, 411 F.2d 455, 460 (3d Cir. 1969)[, *cert. denied*, 396 U.S. 941 (1969)]. If he failed to act in accordance with the judicial mandate or court rule, he would place himself in contempt of court. See *Zimmerman v. Spears*, 428 F. Supp. 759, 752 (W.D.Tex.), *aff'd*, 565 F.2d 310 (5th Cir. 1977); *Davis v. Quarter Sessions Court*, 361 F. Supp. 720, 722 (E.D.Pa.1973); *Ginsburg v. Stern*, 125 F. Supp. 596 (W.D.Pa.1954), *aff'd per curiam on other grounds*, 225 F.2d 245 (3d Cir. 1955) sitting en banc.

*Mourat v. Common Pleas Court for Lehigh County*, *supra*, 515 F. Supp. at 1076.

The doctrine of absolute quasi judicial immunity has been adopted and made applicable to court support personnel because of "the 'danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts[.]'" *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992). *See also*

21

*Ashbrook v. Hoffman*, 617 F.2d 474, 476 (7th Cir. 1980)(collecting cases on immunity of court support personnel).

Furthermore, the United States Court of Appeals for the Fourth Circuit, in *McCray v. Maryland*, 456 F.2d 1 (4th Cir. 1972), concluded that suits against clerks of court were not subject to summary dismissal, however, the Court had occasion to address its prior holding in *McCray v. Maryland* in 1995. *See Pink v. Lester*, 52 F.3d 73 (4th Cir., April 19, 1995), which, in effect, overruled *McCray v. Maryland*. *Cf. Lee X v. Casey*, 771 F. Supp. 725 (E.D.Va. 1991).

In short, plaintiff appears to object to the manner in which the County Clerk's office collects child support payments. The Clerk of Court, however, in collecting the payments, was following a court order, and was obviously acting pursuant to authority delegated to Clerk's Office personnel. As such, plaintiff's allegations that the Clerk of Court has been "unjustly enriched" or "breached a fiduciary duty" are without merit.

G. *Judicial Immunity*

The three family court judges who have been named as defendants are entitled to summary dismissal because they are entitled to absolute judicial immunity. *See Mireles v. Waco*, 502 U.S. 9 (1991); *Stump v. Sparkman*, 435 U.S. 349, 351-364 (1978); *Pressly v. Gregory*, 831 F.2d 514, 517 (4th Cir. 1987)(a suit by South Carolina inmate against two Virginia magistrates); and *Chu v.*

22

*Griffith*, 771 F.2d 79, 81 (4th Cir. 1985) ("It has long been settled that a judge is absolutely immune from a claim for damages arising out of his judicial actions."). *See also Siegert v. Gilley*, 500 U.S. 226 (1991) (immunity presents a threshold question which should be resolved before discovery is even allowed); *Burns v. Reed*, 500 U.S. 478 (1991) (safeguards built into the judicial system tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct); and *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (absolute immunity "is an immunity from suit rather than a mere defense to liability"). The three named family court judges then, would be entitled to summary dismissal.

H. *County of Charleston and Charleston County Council*

While municipalities and other local government bodies are "persons" within the meaning of § 1983, a municipality may not be held liable solely because it employs an alleged tortfeasor. Plaintiff must identify a municipal 'policy or custom' that caused plaintiff's injury. If a custom that has not been formally approved by a municipality is widespread then a municipality may be subject to liability if the practice has the force of law. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S., @ 689, 98 S.Ct., @ 2035.

In this instance, plaintiff has failed to meet the test set

23

forth in *Monell*, and therefore the County of Charleston and the County Council are entitled to summary dismissal.

    I.   "*RICO*"

Plaintiff raises civil RICO claims against some of the defendants. To advance a civil claim under RICO, a plaintiff must allege "(1)conduct (2) of an enterprise (3)through a pattern (4) of racketeering activity." *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3rd Cir. 2004) *citing Sedema, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985). A "pattern of racketeering activity" requires at least two "predicate acts," which may include mail fraud or obstructing justice. Id.; 18 U.S.C. § 1961(1), (5).

After reviewing plaintiff's complaint liberally, and in the light most favorable to him, the complaint is devoid of any language that could be construed to allege a civil RICO violation. In fact, the complaint does not even discuss a "pattern of racketeering activity,". Plaintiff raises his RICO claim based on letters he received from the SCDSS which were notifying him that he was in arrears for child support payments ("DSS Destroy letters"). Notification that your child support payments may not be up to date does not rise to the level of "racketeering". Thus, it appears beyond doubt that plaintiff can prove no set of facts in support of his civil RICO claims that would entitle him to relief.

### RECOMMENDATION

Accordingly, it is recommended that the District Court dismiss

all allegations brought by the plaintiff on behalf of the two minor children, and that the children be dismissed as plaintiffs to this action.

It is also recommended that the District Court dismiss all claims against all defendants *without prejudice* and without issuance and service of process, except the conditions of confinement claims that arose at the Charleston County Detention Center against defendant Cannon. *See Denton v. Hernandez, supra; Neitzke v. Williams, supra; Haines v. Kerner, supra; Brown v. Briscoe,* 998 F.2d 201, 202-204 & n.* (4th Cir. 1993), *replacing* unpublished opinion originally tabled at 993 F.2d 1535 (4th Cir. 1993); *Boyce v. Alizaduh, supra; Todd v. Baskerville, supra,* 712 F.2d at 74; 28 U.S.C. § 1915(e)(2)(B); and 28 U.S.C. § 1915A [the court shall review, as soon as practicable after docketing, prisoner cases to determine whether they are subject to any grounds for dismissal].

Since the conditions of confinement claims arose at the Charleston County Detention Center in Charleston County, South Carolina, it is recommended that plaintiff's motion for a change of venue be denied.

Charleston, South Carolina
Date ___March 24, 2008___

Robert S. Carr
United States Magistrate Judge

**The plaintiff's attention is directed to the important notice on the next page.**

25

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).