IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| David A. Bardes, individually, as a taxpayer, and as next of friend of his two minor children, D.A.B. and A.P.B., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | C.A. No.:2:08-487-PMD-RSC |
| John M. Magera, Attorney for SCDSS; The State of South Carolina; Charleston County, vis-a-vis the County Council of Charleston; McRoy Canterbury, Jr., Admin., Charleston County; Kathleen M. Haynes, Director, SCDSS; Odessa Williams, Charleston County DSS, Director; James A. Cannon, Jr., Sheriff of Charleston County; Correct Care Solutions, LLC; The Hon. R. Wright Turbeville; The Hon. Jocelyn B. Cate; The Hon. Paul W. Garfinkel; Julie J. Armstrong, Clerk of Court, Charleston County; Wishart Norris Henninger & Pittman, P.A.; and Wade Harrison, Esq., all individually, and in their official capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **ORDER** |
| Defendants. | ) ) ) | |

This matter is before the court upon the recommendation of United States Magistrate Judge Robert S. Carr that (1) this court dismiss all allegations brought by Plaintiff on behalf of the two minor children and that the children be dismissed as plaintiffs to this action; (2) this court dismiss all claims against all Defendants without prejudice and without issuance and service of process, except the conditions of confinement claim that arose at the Charleston County Detention Center against Defendant Cannon; and (3) Plaintiff's Motion to Change Venue be denied. The Record contains a Report and Recommendation ("R&R") of a United States Magistrate Judge which was made in accordance with 28 U.S.C. § 636(b)(1). A dissatisfied

party may object, in writing, to an R&R within ten days after being served with a copy of that report. 28 U.S.C. § 636(b)(1). Plaintiff David A. Bardes ("Plaintiff" or "Bardes") filed timely objections to the R&R.

## **BACKGROUND**

While acknowledging that Plaintiff's main objection to the R&R is that it should not have been issued, the court refers to its discussion of the facts as the R&R aptly summarizes Plaintiff's 150-page Complaint.[1] Plaintiff brought this action on February 12, 2008, asserting the action "is brought pursuant to 42 U.S.C. § 1983 and 18 U.S.C. § 1962." (Compl. at 3.) He also asserts this court has jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367. (*Id.*) He named the following individuals as Defendants: John M. Magera, an attorney employed by the South Carolina Department of Social Services ("SCDSS"); the State of South Carolina; Charleston County; Charleston County Council; McRoy Canterbury, Jr., Administrator for Charleston County; Kathleen M. Haynes, Director of the SCDSS; Odessa Williams, Director of the Charleston County Department of Social Services (CCDSS); James A. Cannon, Jr., Sheriff of Charleston County; Correct Care Solutions, LLC; three South Carolina family court judges (the Honorable R. Wright Turbeville; the Honorable Jocelyn B. Cate, and the Honorable Paul W. Garfinkel); Julie Armstrong, Clerk of Court for Charleston County; Wishart Norris Henninger & Pittman, P.A.; and Wade Harrison, an attorney.      This matter arises out of a South Carolina family court case wherein Plaintiff was told he was in arrears for the support of his two minor children. Plaintiff alleges he and his (then) wife divorced in the state of Pennsylvania and that he was ordered to pay child support

---

[1]The court notes that it has independently reviewed the Complaint and concludes the R&R correctly summarized the facts. Thus, the "Background" section of this Order is lifted from the Magistrate Judge's R&R.

directly to her. Plaintiff's ex-wife was granted primary placement by the Pennsylvania court, and she moved to Charleston, South Carolina with the two minor children. Plaintiff subsequently moved to Charleston to be closer to his children.

Plaintiff alleges he was served in January of 2004 with a South Carolina "notice of Gross Arrears, a Notice of Registration of the Foreign Support Order for Enforcement, a notice of a scheduled hearing to contest arrears, and a 20-day notice to contest foreign registration. (Compl. at 8.) Plaintiff requested a hearing to contest the registration of the foreign support order. According to Plaintiff, Defendant Magera "intercepted and/or never filed the motion to contest registration." (*Id*. at 12.)

Plaintiff further claims that he was threatened, coerced, and ordered to make all future child support payments through Charleston County Courts. Plaintiff made the payments through the County Court but was still held in arrears. Plaintiff was advised by the SCDSS, apparently by mail,[2] that they would seize his assets, revoke his licenses and passports, and destroy his credit history. Plaintiff alleges his creditors began calling and his business credit rating (Plaintiff was self-employed at the time) was "shut down." Plaintiff indicates his situation led him to become depressed, anxious, and fearful. Additionally, Plaintiff vehicle and recreational vehicle (RV) were repossessed. Magera eventually had Plaintiff's "'false arrears' zero balanced" in October 2004, but Plaintiff was not given credit for overpayments he claims he made. Plaintiff alleges that Magera violated his First, Fourth, Fifth, Seventh, Eighth, Ninth, and Fourteenth Amendment rights.

Plaintiff also alleges he is paying more than the South Carolina guidelines require him to pay. Plaintiff indicates he is unable to pay an attorney to take the matter back into court. Plaintiff's

---

[2]Plaintiff refers to this correspondence as "DSS Destroy letters."

last payment to the Charleston County Clerk of Court was made in August 2004, the same month Plaintiff's ex-wife and the minor children moved to North Carolina.

The Pennsylvania support order was registered in North Carolina for enforcement once his ex-wife moved to that state. Plaintiff found employment in North Carolina but the company eventually went out of business. Plaintiff was found in gross arrears by a North Carolina family court, and was under "such a strain that he suffered from a five-day period of 'depressive coma' and nearly died." (*Id*. at 19.)[3]

Plaintiff states that he was unable to find any other employment in North Carolina and moved back to Clarendon County in South Carolina in December of 2004. Plaintiff sold his last remaining asset and rented a single-wide trailer. Plaintiff claims he was mentally disabled with severe depression. He was unable to find work due to his poor credit rating and because Plaintiff's resume showed that he was once earning $180,000 a year. Plaintiff alleges employers did not want to hire someone who once worked at the World Trade Center but was applying for a temporary job at the local library.

Eventually Plaintiff was served with papers requiring him to attend "Order to Show Cause" hearings in both North and South Carolina, and Plaintiff asserts he attended both hearings. Since Plaintiff had previously received a "zero balance" from the State of South Carolina, but was not given credit for his overpayments, Plaintiff alleges he began to accrue actual arrears based on an income level he no longer had, and had not had, since he lived in Pennsylvania. Plaintiff claims the North Carolina court set the matter aside until South Carolina had ruled on its Order to Show Cause.

---

[3]According to the Complaint, the Pennsylvania family court also believed Plaintiff was in arrears. Plaintiff alleges the Pennsylvania court had no records of enforcement from either North or South Carolina.

Plaintiff requested a hearing in the South Carolina family court but was denied a jury trial. Plaintiff alleges this is a violation of his Constitutional rights by the family court judge. Plaintiff did, however, receive a hearing in front of a South Carolina family court judge in October of 2005. According to the Complaint, Magera explained to the court that the Pennsylvania support order was initially registered in South Carolina in January of 2004. Magera told the court that, at that time, the Plaintiff filed a late objection to the registration but the matter was allowed to be heard. The arrearage was struck at that hearing, but Plaintiff was now currently in arrears for a total of $29,762.70. The motion to contest the registration was apparently never heard. Magera said that because the arrearage had been set aside there was "no issue" as it pertained to registration. Magera therefore asked that the motion to contest registration be dismissed and that a bench warrant be issued for failure to pay, with an order that Plaintiff pay through the court.

The Complaint alleges that the judge ordered the SCDSS to obtain Plaintiff's medical records and work out a solution with him. When the order from the October 2005 hearing was entered, it showed that the family court judge ruled that Plaintiff had agreed that he had a duty to support his children but that the judge was unsure if Plaintiff was able to do so. Plaintiff was ordered to sign a release so the SCDSS could obtain his medical records, including any psychological evaluations that were available.

Plaintiff alleges that Magera made verbal threats on his life after the hearing. Plaintiff had attended the hearing with a friend of his, and, upon returning to Clarendon County, the friend arranged for a four day intensive clinic in Orlando to help the Plaintiff, but Plaintiff alleges he continued to fear for his life. The Plaintiff indicates he phoned the Governor, the State Attorney General, and (then) Solicitor Hoisington to report "the crime of harassment and stalking, but the

5

calls were never returned."

Plaintiff scheduled a meeting with his psychiatrist when he received the release forms in the mail. The psychiatrist stated it was highly unusual to send a blanket request and he said he could not fill out the form without knowing what the SCDSS wanted. Nonetheless, Plaintiff complied with the court order and signed the releases.

Plaintiff challenges the order from the court hearing indicating that he did, in fact, contest the registration. Plaintiff agrees that there was to be a determination, after all medical records were received, as to Plaintiff's ability to pay child support. Plaintiff states that no meeting took place between himself and the SCDSS. Plaintiff further alleges Magera intentionally set another Rule to Show Cause hearing and conspired with the family court judge to kill Plaintiff. Plaintiff contacted the Department of Justice in Washington, D.C., who put him in touch with the Federal Bureau of Investigation (FBI). The plaintiff alleges he faxed information to the FBI but did not receive any assistance. He also sent a copy of the same information to the Director of the FBI.

Another family court hearing took place in April 2006 where Plaintiff was sentenced to six months in jail for failure to pay child support. Plaintiff alleges he was locked in a "cold cell" located off the main booking area. According to the Complaint, the cell has a large refrigeration vent located near the ceiling above the entrance door, and a "booster fan" was located behind the vent to blow "super chilled" air into the cell. Plaintiff states he was locked in the "cold cell" for three days without water, food, bedding, blankets, or the necessary clothing to protect him against hypothermia. His repeated requests for a jacket were denied. Plaintiff then states,

> Within approximately 8-12 hours Plaintiff had fallen into stage 3 hypothermic shock; Plaintiff had informed a Jailer-Defendant that Plaintiff was hypothermic by stating that his body was unable to shiver to keep itself with heat. Plaintiff asked the Jailer-Defendant to notify the nurse. The Jailer-Defendant replied, "I will do no such

6

> thing."
> Plaintiff suffered tremendous pain, slow loss of use of limbs, violent shivering, painful muscle stiffening, the horror and fright that death was imminent, and the realization that Defendant Magera and Defendant Garfinkel planned his death so quickly and by means of severe hypothermia leading to death by heart failure or brain death, whichever came first.
> Within approximately 8-12 hours, Plaintiff's brain began to shut down and Plaintiff suffered increasing memory loss until he lost all thought and lost consciousness. Plaintiff slipped into an unconscious hypothermic coma.  Plaintiff believed he died.

(Compl. at 97.)  Plaintiff was removed after the third day and placed on a mat with a blanket by some prison guards.  (*Id*. at 100.)

A subsequent guard shift was unaware of Plaintiff's predicament and beat him because he was unable to stand, move his limbs, or recite his name.  Plaintiff claims that the guards soon realized something was wrong and took him to the jail's hospital where he was placed on suicide watch.  Plaintiff alleges that he was "wracked with agonizing pain and was suffering from ventricular tachacardia" as his body warmed.  (*Id*.)

According to Plaintiff, the next day the doctor "realized that Plaintiff's body was still in danger of death" but refused to provide him with medical treatment, leaving him on the floor of the suicide watch room for six days without a blanket.  (*Id*.)  Plaintiff alleges the guards were engaged in a conspiracy to commit murder, or involuntary manslaughter.  Plaintiff also claims that the Jailer-Defendants violated state law by not providing him with a blanket.  He also maintains this was a violation of his Eighth and Fourteenth Amendment rights and says that Magera "attempted murder via severe hypothermia in the Charleston County Jail."

Plaintiff spent seventy-three days in the Charleston County jail.  He retained the services of an attorney to secure his release and alleges there were four conditions to his release: (1) that Plaintiff would not sue anyone having to do with the family court case; (2) that Plaintiff would admit

he owed child support in arrears and would reduce the balance by half; (3) that Plaintiff would seek medical help; and (4) that he was expected to leave the state although this was "not put in writing." Plaintiff's father paid $20,000 to the court. (*Id*. at 104.) The jail psychologist and Plaintiff's personal psychologist agreed Plaintiff did not need further treatment. The agreement was sent to Plaintiff at the jail, and he alleges that he signed it under duress and that it is "void on several accounts." (*Id*. at 105.) He maintains that the state of South Carolina does not have jurisdiction over him and never did. Additionally, Plaintiff alleges he was not competent to enter into a contract at that time.

There appears to be a pending state court case brought in North Carolina against Plaintiff by his ex-wife for outstanding child support payments. According to the Complaint, Plaintiff's ex-wife retained the law firm of Wishart Norris Henninger & Pittman. Wade Harrison is an attorney with this firm and represents Plaintiff's ex-wife in the proceedings.

Plaintiff has written an approximately 150-page book entitled *The Public Trust: Statement of Fact*, which he says is the official testimony and evidence for this case, and which he has attached to his Complaint. The multiple counts he raises in his Complaint include, but are not limited to, RICO, § 1983 claims, unjust enrichment, breach of fiduciary duty, fraud, and extortion. Plaintiff seeks damages as well as injunctive and declaratory relief.

## STANDARD OF REVIEW

This court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R. 28 U.S.C. § 636(b)(1). After a review of the entire record, the R&R, and Plaintiff's objections, the court finds that the Magistrate Judge fairly

and accurately summarized the facts. However, because the court concludes the Complaint should not have been screened by the Magistrate Judge pursuant to the PLRA, 28 U.S.C. § 1915A, or 28 U.S.C. § 1915, the court does not adopt the Report and Recommendation to the extent that it recommends (1) dismissing all allegations brought by Plaintiff on behalf of the two minor children and dismissing the children as plaintiffs to this action and (2) dismissing all claims against all Defendants without prejudice, except the conditions of confinement claim that arose at the Charleston County Detention Center against Defendant Cannon.[4] However, the court adopts the R&R to the extent that it recommends denying Plaintiff's Motion to Change Venue.

## ANALYSIS

I.    **Objection to Application of the PLRA, 28 U.S.C. § 1915A, and 28 U.S.C. § 1915**

The R&R states, "Under established local procedure in this judicial district, a careful review has been made of the *pro se* complaint pursuant to the procedural provisions of **28 U.S.C. § 1915, 28 U.S.C. § 1915A,** and **the Prison Litigation Reform Act.**" (R&R at 10 (emphasis added).) Although Plaintiff filed several objections, most of them are actually reiterations of his main objection, which is that the Magistrate Judge erred in entering a Report and Recommendation because Plaintiff paid his filing fee and is not a prisoner. (Objections at 1.) He states,

> [T]his Court has completely and utterly violated the [Plaintiff's] liberty, due process, and equal protection rights to otherwise free and equal access to the courts, by allowing the magistrate to "screen" his complaint, as if he were somehow a *convicted* state or federal prisoner, *incarcerated*, and filing a federal complaint over *strictly* prisoner issues *only*, which then–and **only** then–would make him subject to the provisions of 28 U.S.C. §§ 1915 and 1915A.

---

[4]For the sake of clarity, the court notes that it dismisses no claims and no Defendants at this time. The court expresses no opinion on the Magistrate Judge's substantive analysis of Plaintiff's claims.

(*Id.*)  Although he does so "without waiving any rights or objections . . . regarding the nullity of the screening of the instant complaint," the Plaintiff then objects to specific recommendations in the R&R. (*Id.* at 3.)  For example, Plaintiff asserts the "Rooker/Feldman . . . arguments do not even apply." (*Id.*)  Another example is Plaintiff's objection to the Magistrate Judge's analysis concerning prosecutorial immunity.  Plaintiff states, "[T]here is no immunity for acts clearly outside the scope of lawful power and authority, such as making personal death threats, obstruction of justice, harassment, abuse of power, and the like."  (*Id.* at 4.)

Despite referencing the Prison Litigation Reform Act, 28 U.S.C. § 1915A, and 28 U.S.C. § 1915, the Magistrate Judge did not analyze whether the elements of these authorities had been satisfied before beginning his review.  The court therefore turns its analysis to whether Plaintiff's Complaint should have been screened pursuant to these authorities.

## A.    *The Prison Litigation Reform Act*

The Prison Litigation Reform Act ("PLRA") requires, *inter alia*, a district court "to screen (before docketing, if feasible) complaints filed by *prisoners* and requires the court to dismiss a complaint if it is 'frivolous, malicious, or fails to state a claim.'" *Michau v. Charleston County, S.C.*, 434 F.3d 725, 727 (4th Cir. 2006) (emphasis added) (citing 28 U.S.C. § 1915A(b)(1)).  A prisoner is "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  28 U.S.C. § 1915A(c); *see also* 28 U.S.C. § 1915(h).  Ex-prisoners are not prisoners; after release, the PLRA does not apply to them, even if they bring suit about events that occurred in prison.  *See Ahmed v. Dragovich*, 297 F.3d 201, 210 n.10 (3d Cir. 2002) (citing cases); *Janes v. Hernandez*, 215 F.3d 541, 543 (5th Cir. 2000); *Greig v.*

*Goord*, 169 F.3d 165, 167 (2d Cir. 1999); *Segalow v. County of Bucks,* No. 00-cv-5642, 2004 WL 1427137 at *1 (E.D. Pa. June 24, 2004) (holding that a prisoner who was released, filed his complaint, was reincarcerated, was released again, and filed an amended complaint naming a new party was not a prisoner for PLRA purposes).  Furthermore, the Fourth Circuit recently held that the PLRA does not provide for dismissal of a complaint when the Plaintiff "does not meet the PLRA's definition of 'prisoner.'" *See Michau*, 434 F.3d at 727-28; *see also Cofield v. Bowser*, 247 Fed. App'x 413, 414 (4th Cir. 2007) ("Because Cofield was not a prisoner when he filed his complaint, the PLRA exhaustion requirement is not applicable to his § 1983 action.").

In the instant case, it does not appear that Plaintiff was a prisoner at the time he filed his Complaint.  The Magistrate Judge thus erred when he reviewed Plaintiff's Complaint pursuant to the PLRA.

**B.**     ***28 U.S.C. § 1915A - Screening***

Likewise, Plaintiff is not a prisoner for the purposes of 28 U.S.C. § 1915A because Plaintiff was not incarcerated or otherwise in custody when he filed his Complaint.  This statute provides:

> **(a) Screening.**--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a *prisoner* seeks redress from a governmental entity or officer or employee of a governmental entity.
> **(b) Grounds for dismissal**.--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint -
>> **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>> **(2)** seeks monetary relief from a defendant who is immune from such relief.
> **(c) Definition.**--As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.

28 U.S.C. § 1915A (emphasis added).

11

In *Michau v. Charleston County, South Carolina*, 434 F.3d 725 (4th Cir. 2006), the district court reviewed the plaintiff's two complaints pursuant to the PLRA and the statues governing *in forma pauperis* ("IFP") filings, ultimately dismissing the complaints for failure to state a claim upon which relief could be granted. *Michau*, 434 F.3d at 726-27. On appeal, the Fourth Circuit noted the plaintiff "would have qualified as a 'prisoner' under the PLRA while he was serving the sentences on his criminal convictions." *Id*. at 727. However, because he was detained under South Carolina's Sexually Violent Predator Act at the time he filed his suits, he did not meet the PLRA's definition of a "prisoner." *Id*. The court thus concluded the "PLRA provide[d] no basis for the dismissal of [the plaintiff's] complaints." *Id*. at 728. However, the Fourth Circuit affirmed the dismissal, stating,

> That the PLRA is inapplicable . . . does not require us to reverse the district court's dismissal of [plaintiff's] complaints. Under 28 U.S.C.A. § 1915(e), which governs IFP filings in addition to complaints filed by prisoners, a district court must dismiss an action that the court finds to be frivolous or malicious or that fails to state a claim. *See* 28 U.S.C.A. § 1915(e)(2)(B). The district court relied on § 1915(e)(2)(B) in addition to the PLRA when dismissing [plaintiff's] complaints. After reviewing the claims asserted by [plaintiff] in his complaints, we cannot say that the district court abused its discretion by dismissing the complaints under § 1915(e)(2)(B). *See Nasim v. Warden*, 64 F.3d 951, 954 (4th Cir. 1995) (en banc) (explaining that a district court's decision to dismiss a complaint under § 1915 is reviewed for abuse of discretion).

*Id*.; *see also Kane v. Lancaster County Dep't of Corr.*, 960 F. Supp. 219, 220 (D. Neb. 1997) ("Kane is not a 'prisoner' for purposes of 28 U.S.C. § 1915 and 28 U.S.C. § 1915A because Kane was not in jail or otherwise in custody when he filed the complaint. While Kane was a prisoner at the time of the incident alleged in the complaint, this fact does not allow us to treat Kane as a 'prisoner' for purposes of 28 U.S.C. §§ 1915 and 1915A."); *cf. Ray v. Evercom Sys., Inc.*, No. 4:05-2904-RBH, 2006 WL 2475264, at *3-4 (D.S.C. Aug. 25, 2006) (rejecting the prisoner-plaintiffs' argument that the case was removed from the screening requirements of 28 U.S.C. § 1915A because they paid the

filing fee).  The Magistrate Judge thus erred in screening Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A.

**C.**    ***28 U.S.C. § 1915 - In Forma Pauperis***

In contrast to § 1915A, which explicitly only applies to actions filed by prisoner litigants, § 1915(e)(2) does not contain language indicating that it only applies to actions filed by prisoners; the court instead notes that § 1915 is entitled "Proceedings in forma pauperis."  Accordingly, the fact that Plaintiff filed his action while a non-prisoner will not necessarily prevent this court from performing a § 1915(e)(2) analysis.  *See Michau*, 434 F.3d at 728 (affirming the district court's dismissal of two complaints pursuant to § 1915(e)(2)(B), even though the plaintiff was not a prisoner, because the plaintiff was proceeding *in forma pauperis*); *see also Kane*, 960 F. Supp. at 221-22 (interpreting 28 U.S.C. § 1915(e)(2)(B)(i) "to authorize preanswer screening of **nonprisoner in forma pauperis** complaints for the purpose of deciding whether the complaint is frivolous or malicious" (emphasis added)).  Title 28, Section 1915(e) states,

> **(e)(1)** The court may request an attorney to represent any person unable to afford counsel.
> **(2)** Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
> > **(A)** the allegation of poverty is untrue; or
> > **(B)** the action or appeal--
> > > **(i)** is frivolous or malicious;
> > > **(ii)** fails to state a claim on which relief may be granted; or
> > > **(iii)** seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e).

While it appears settled, at least in the Fourth Circuit, that the application of § 1915(e) does not depend on whether the plaintiff is a prisoner or not, what is not settled is whether § 1915(e)(2) screening should take place even if the plaintiff is not a prisoner and has paid the filing fee.  An

administrative order from the Sixth Circuit provides some support to the argument that a complaint should be screened pursuant to § 1915(e)(2) even if the plaintiff (1) is not a prisoner and (2) paid the filing fee. *See In re Prison Litigation Reform Act*, 105 F.3d 1131 (6th Cir. 1997).[5]  This order states,

> Even if a non-prisoner pays the filing fee and/or is represented by counsel, the complaint must be screened under § 1915(e)(2).  The language of § 1915(e)(2) does not differentiate between cases filed by prisoners and cases filed by non-prisoners.  The screening must occur even before process is served or the individual has had an opportunity to amend the complaint.  The moment the complaint is filed, it is subject to review under § 1915(e)(2).  If the complaint falls within the requirements of § 1915(e)(2) when filed, it must be dismissed.
>
> Section 1915(e)(2) states that regardless of whether a filing fee has been paid, the district court must dismiss the case if the complaint satisfies the factors of § 1915(e)(2).  Thus, even if the filing fee is paid, the district court must dismiss the complaint if it comports with § 1915(e)(2).

*Id*. at 1134.[6]

The court does not agree with this analysis and instead finds the Sixth Circuit's opinion in *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999), to be persuasive.  In that case, the plaintiff filed suit against the defendant judges and prosecutors pursuant to 42 U.S.C. § 1983 and the Racketeer Influenced and Corrupt Organizations Act.  *Benson*, 179 F.3d at 1015.  Although the plaintiff paid

---

[5]This document is an administrative order issued by then-Chief Judge Boyce F. Martin, Jr. *In re Prison Litigation Reform Act*, 105 F.3d 1131.  The order states,
> [T]o assure uniformity throughout the Sixth Circuit in the implementation of the Prison Litigation Reform Act, I am issuing this administrative order under my authority as Chief Judge until such time as panels of this court have the opportunity to address the numerous issues raised by the Act.

*Id*. at 1131.

[6]It appears that the passage quoted above is no longer good law.  In *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999), a panel of judges of the United States Court of Appeals for the Sixth Circuit clarified that § 1915(e)(2) only applies to litigants who are proceeding *in forma pauperis*.  *See Benson*, 179 F.3d at 1017.

the requisite filing fee and did not request leave to proceed in forma pauperis, the district court "erroneously believed that this was an in forma pauperis action" and "'screened' the complaint sua sponte pursuant to 28 U.S.C. § 1915(e)(2)." *Id*.  The district court dismissed the complaint as frivolous pursuant to § 1915(e)(2), and the plaintiff appealed. *Id*.

The United States Court of Appeals for the Sixth Circuit vacated the district court's order dismissing the action pursuant to § 1915(e)(2) and remanded the case for further proceedings. *Id*. at 1017.  The court concluded that 28 U.S.C. § 1915(e)(2) is inapplicable to actions that are not pursued *in forma pauperis* and provided, at the very least, four reasons in support of its holding. *Id*. at 1016-17.  First, § 1915 is entitled "Proceedings in forma pauperis," and the Sixth Circuit stated, "To our knowledge no other part of § 1915 has been applied to actions not pursued in forma pauperis." *Id*. at 1016; *see also* 28 U.S.C. § 1915.  The court continued, "Moreover, § 1915(e) is the product of the PLRA's revision and renumbering of former § 1915(d), and former § 1915(d) clearly applied only to in forma pauperis actions." *Benson*, 179 F.3d at 1016.

Second, the Sixth Circuit examined the structure of § 1915(e), concluding the structure "further indicates that it is directed only at in forma pauperis actions." *Id*.  The court reasoned, "Under § 1915(e)(2)(A) 'the case' may be dismissed because of a false allegation of poverty. Clearly, 'the case' must be an in forma pauperis case for the purposes of subsection A, and it would be anomalous to hold that it could be otherwise for the purposes of subsection B." *Id*. at 1016-17.  Third, the court concluded that the other circuits to have addressed the question "agree that § 1915(e)(2) applies only to in forma pauperis actions." *Id*. at 1017 (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998); *Marks v. Solcum*, 98 F.3d 494, 495 (9th Cir. 1996); *Porter v. Fox*, 99 F.3d 271, 273 n.1 (8th Cir. 1996)).  Finally, the court stated, "[I]f this court were to hold that §

1915(e)(2) applies regardless of in forma pauperis status, the district courts would be obliged to screen *all* complaints filed and dismiss those that are found to be deficient." *Id*. For the above-stated reasons, the Sixth Circuit concluded that "28 U.S.C. § 1915(e)(2) is inapplicable to actions that are not pursued in forma pauperis." *Id*.

Compared to the Sixth Circuit, the Fourth Circuit has provided very little discussion of whether a non-prisoner plaintiff who pays the filing fee should be subject to review pursuant to § 1915(e)(2). The Fourth Circuit did approve the use of § 1915(e)(2) in the context of a non-prisoner plaintiff, but the plaintiff was proceeding in forma pauperis. *See Michau*, 434 F.3d at 728. Furthermore, the United States District Court for the District of South Carolina has stated, "Notwithstanding that the prisoner Charles W. Penland, Sr. paid the full filing fee and joined his wife, a non-prisoner, as a named plaintiff, his claims are subject to review pursuant to the procedural provisions of 28 U.S.C. § 1915(e)(2) and § 1915A." *Penland v. County of Spartanburg*, No. 6:07-3288-HFF-WMC, 2007 WL 3992498, at *2 (D.S.C. Nov. 15, 2007). The district court cited *Boyce v. Alizaduh*, 595 F.2d 948 (4th Cir. 1979), for the proposition that *Boyce* recognized "a district court's authority to conduct an initial screening of any *pro se* filing." *Penland*, 2007 WL 3992498, at *2.[7] However, the plaintiff in *Boyce* was in fact a prisoner, and it is interesting to note what the Fourth Circuit actually stated in *Boyce*:

> Turning from the procedure to be used under § 1915(d) to the substantive question of when the power thereby given is to be exercised, many decisions have

---

[7]The court noted that *Boyce* "has been held by some authorities to have been abrogated in part, on other grounds, by *Neitzke v. Williams*, 490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) (insofar as *Neitzke* establishes that a complaint that fails to state a claim, under Federal Rule of Civil Procedure 12(b)(6), does not by definition merit *sua sponte* dismissal under 29 U.S.C. § 1915(e)(2)(B)(i) [formerly 28 U.S.C. § 1915(d)], as 'frivolous')." *Penland*, 2007 WL 3992498, at *2 n.2.

16

declared that the exercise of that authority is discretionary and that the discretion is "especially broad" in civil rights actions brought by prisoners. But however broad the discretion may be, it may not be exercised arbitrarily and is limited in a Pro se case, such as here, by the rule in <u>Haines v. Kerner</u> (1972) 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 and in every case by the language of the statute itself which restricts its application to complaints found to be "frivolous or malicious."

*Boyce*, 595 F.2d at 951 (citations omitted).

Although it might be possible to read *Boyce* to provide authorization to screen all pro se filings, the court disagrees with such a reading. First, the plaintiff in *Boyce* was a prisoner, and although not conclusive from a reading of the opinion, it appears the plaintiff was also proceeding in forma pauperis. *See Boyce*, 595 F.2d at 950.[8] Furthermore, the Fourth Circuit seemingly indicated in *Michau* that § 1915(e) "governs IFP filings in addition to complaints filed by prisoners." *Michau*, 434 F.3d at 728. Lastly, the court is not persuaded by any statement in *Penland* that § 1915(e)(2) allows a court to dismiss a claim pursuant to that subsection even when the plaintiff is a non-prisoner who has paid his filing fee. The court in *Penland* cited to the Sixth Circuit's Administrative Order, which this court finds no longer persuasive, and *Boyce*, which was discussed above. The court instead concludes the rationale of *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999), is persuasive. *See also Farese v. Scherer*, 342 F.3d 1223, 1228 (11th Cir. 2003) (stating, in the context of a pro se action brought by a federal prisoner, "[B]ecause § 1915, which governs only IFP proceedings, does not apply to Farese's fees-paid RICO claim, the district court was not authorized to dismiss the RICO claim pursuant to § 1915."); *Stafford v. United States*, 208 F.3d 1177, 1179 n.4 (10th Cir. 2000) ("Here, appellant did not proceed under the IFP scheme, but paid

---

[8]The court stated, "The district court rested its authority to dismiss on § 1915(d). The exercise of this statutory authority as a basis for dismissal of an action, particularly in connection with a Forma pauperis suit by prison inmates, has long been approved in this Circuit." *Boyce*, 595 F.2d at 950.

the full filing fee at the outset.  Thus, § 1915(e)(2), with its screening procedure for dismissing IFP appeals that are frivolous, fail to state a claim, seek monetary relief from immune defendants, or rest on false allegations of poverty, is not applicable."); *Tucker v. Branker*, 142 F.3d 1294, 1296 (D.C. Cir. 1998) (noting that the PLRA "provides that the district court 'shall dismiss' a case filed IFP if it determines that the case '(1) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief'" (quoting 28 U.S.C. § 1915(e)(2)(B)); *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) ("As [a]ppellant was not proceeding *in forma pauperis*, his complaint could not be dismissed pursuant to § 1915(e)(2)."); *cf. Marks v. Solcum*, 98 F.3d 494, 495 (9th Cir. 1996) ("A provision of the [PLRA], 28 U.S.C. § 1915(e)(2) (as amended), applies to prisoner proceedings in forma pauperis and requires us to dismiss an appeal sua sponte at any time if the case is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief."); *Porter v. Fox*, 99 F.3d 271, 273 n.1 (8th Cir. 1996) ("We note that the new procedures in the Prison Litigation Reform Act of 1995 (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), allowing dismissal for failure to state a claim do not apply to this case: Porter was not proceeding in forma pauperis, nor was he a prisoner.").  Because Plaintiff is a non-prisoner who paid his filing fee, the court concludes that it was error to screen his Complaint pursuant to 28 U.S.C. § 1915(e)(2).  The court therefore does not adopt the Report and Recommendation to the extent that it recommends dismissing Plaintiff's Complaint.[9]

---

[9]On April 8, 2008, the same time Plaintiff filed his Objections, he filed a Motion to Amend Complaint.  (*See* Doc. No. [16].)  In light of the court's ruling on Plaintiff's Objections, the court is uncertain as to whether Plaintiff still seeks to amend his Complaint.  Rule 15(a) of the Federal Rules of Civil Procedure states in part,

**(a) Amendments Before Trial.**

**II.     Objection Concerning Recommendation with Respect to Motion to Change Venue**

In the R&R, Magistrate Judge Carr recommended denying Plaintiff's Motion to Change Venue. (R&R at 25.) The R&R states, "Since the conditions of confinement claims arose at the Charleston County Detention Center in Charleston County, South Carolina, it is recommended that plaintiff's motion for a change of venue be denied." (*Id.*)

In his Objections, Plaintiff states that he "filed with purpose in [the] Columbia Division" and that "*no* party ever asked for a change of venue, *no* motion for a change of venue was ever granted, and there was *no* reason to change." (Objections at 7.) Plaintiff further asserts "the vast majority of the Defendants are *government* units, or *governmental* officials or employees, who will surely be at least initially represented using the State's dime, and the one or more deputy attorneys general who will represent them, are all in Columbia." (*Id.* at 8.) He also seems to assert his Motion to Change Venue should be granted due to an alleged improper bias against him; he states,

> And further, the required appearance of full impartiality has been completely and totally shattered by the recent violations of this Division against my basic access rights to the courts;

---

> **(1)** *Amending as a Matter of Course*. A party may amend its pleading once as a matter of course:
> **(A)** before being served with a responsive pleading; or
> **(B)** within 20 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar.
> **(2)** *Other Amendments*. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Plaintiff filed his Motion to Amend before a responsive pleading was served, but Defendant James A. Cannon, Jr. filed an Answer before the court issued a ruling on the Motion to Amend. However, the court determines that Plaintiff should have the opportunity to amend his Complaint, should he choose to do so, and therefore grants Plaintiff's Motion to Amend. Plaintiff has thirty (30) days from the date of this order in which to file an Amended Complaint.

> Moreover, it is highly unlikely that the justices of the Division's Court do not already have longstanding working relationships and personal friendships with most or all of the individually named governmental Defendants, and that the same justices of this Division's Court have also been most likely appointed from among the very same entities and circles of friends as do the majority of the individually named governmental Defendants, and, as such, the Plaintiff simply can not reasonably expect proceedings held within this Division to be completely and totally without even the appearance of bias and/or prejudice . . . as to discrimination regarding even basic and fundamental access rights.

(*Id.*)[10]

The District of South Carolina's Local Rule 3.01 provides that "[e]xcept for actions by prisoners and social security cases, all civil cases must be assigned to that division of the district: (1) where a substantial part of the events or omissions giving rise to the claim occurred, where any natural defendant resides or where any corporate/other organization defendant does business relating to the events or omissions alleged. . . . " Local Rule 3.01(A), D.S.C. The rule also provides, however, that "[a]ny case may be transferred for case management or trial from one division to another division on motion of any party for good cause shown or sua sponte by the Court." Local Rule 3.01(C), D.S.C.

The court concludes that Charleston is the proper division of the district, as it is where a substantial part of the events giving rise to the claims occurred. *See* Local Rule 3.01(A), D.S.C. As the Magistrate Judge noted in the R&R, Plaintiff complains about the treatment he received while he was at the Charleston County Detention Center. He also names as Defendants Charleston County, County Council of Charleston, Charleston County's Administrator, Director of the

---

[10]Plaintiff does not seem to object to the fact that the Magistrate Judge made a recommendation on the Motion to Change Venue; the objection instead seems to be that the Magistrate Judge erred in recommending the denial of that motion. To the extent Plaintiff objects to the issuance of a recommendation with respect to this motion, that objection is overruled. *See* 28 U.S.C. § 636(b); *see also* Local Rule 73.02(B)(2)(e), D.S.C.

Charleston County Department of Social Services, and the Charleston County Clerk of Court. Plaintiff alleges he was ordered to make all child support payments through the Charleston County Courts and that the Charleston County Clerk of Court "stole and embezzled 5% of each payment" he made. (Compl. at 9.) Furthermore, it appears the hearings before Judge Cate, Judge Turbeville, and Judge Garfinkel of which Plaintiff complains took place in Charleston, South Carolina. (*Id*. at 18, 26, 80.) It also appears from Plaintiff's Complaint that Defendant Magera's alleged death threat occurred in Charleston. (*Id*. at 68.) Given that a substantial part of the events giving rise to Plaintiff's claims occurred in Charleston, South Carolina, the case is properly before the Charleston Division of the United States District Court for the District of South Carolina. Furthermore, because the court concludes Plaintiff has failed to show good cause for the transfer and has failed to show that a transfer is appropriate pursuant to 28 U.S.C. § 1404, the court denies Plaintiff's Motion to Change Venue.

<u>CONCLUSION</u>

It is therefore **ORDERED**, for the foregoing reasons, that Plaintiff's Motion to Amend is **GRANTED**. Plaintiff is ordered to file an Amended Complaint within thirty (30) days of the date of this Order. It is further **ORDERED** that Plaintiff's Motion to Change Venue is **DENIED**.

**AND IT IS SO ORDERED**.

PATRICK MICHAEL DUFFY
United States District Judge

Charleston, South Carolina
June 25, 2008

21