IN THE UNITED STATES DISTRICT COURT  ?00? AUG 10  A 10: 31
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| David A. Bardes, individually, as )<br>a taxpayer, and as next friend of )<br>his two minor children, D.A.B. and )<br>A.P.B., )<br> )<br>     -versus-                    )<br> )<br>John H. Magera, Attorney SCDSS; )<br>The State of South Carolina; )<br>Charleston County, vis-a-vis )<br>the County Council of Charleston; )<br>McRoy Canterbury, Jr., Admin., )<br>Charleston County; Kathleen M. )<br>Hayes, Director, SCDSS; Odessa )<br>Williams, County County DSS, )<br>Director; James A. Cannon, Jr., )<br>Sheriff of Charleston County; )<br>Correct Care Solutions, LLC; The )<br>Hon. Wright Turbeville; The Hon. )<br>Jocelyn B. Cate; The Hon. Paul W. )<br>Garfinkel; Julie J. Armstrong, )<br>Clerk of Court, Charleston County; )<br>Wishart Norris Henninger & Pittman,)<br>P.A.; and Wade Harrison, Esq., all )<br>individually and in their official )<br>capacities, )<br> )<br>               Defendants.      ) | C.A. No. 2:08-487-PMD-RSC<br><br><br><br>**REPORT AND RECOMMENDATION** |

This matter brought by Plaintiff David Bardes proceeding pro
se is before the undersigned United States Magistrate Judge for a
report and recommendation on motions to dismiss the action by all
defendants except James A. Cannon in his individual capacity. 28
U.S.C. § 636(b).

1

The plaintiff, David A. Bardes, filed a complaint on February 12, 2008, and an amended complaint on September 15, 2008, on his behalf and on behalf of his two minor children. He alleges that this court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 1983 because his constitutional rights have been violated. He also alleges violations of other federal statutes and raises pendant state law claims over which the court may have supplemental jurisdiction pursuant to 28 U.S.C. § 1367. He named the following individuals and entities as Defendants: John M. Magera, an attorney employed as prosecutor by the South Carolina Department of Social Services ("SCDSS"); the State of South Carolina; Charleston County; Charleston County Council; McRoy Canterbury, Jr., Administrator for Charleston County; Kathleen M. Haynes, Director of the SCDSS; Odessa Williams[1], Director of the Charleston County Department of Social Services ("CCDSS"); James A. Cannon, Jr., Sheriff of Charleston County; Correct Care Solutions, LLC ("CCS"); three South Carolina family court judges: the Honorable R. Wright Turbeville; the Honorable Jocelyn B. Cate, and the Honorable Paul W. Garfinkel; Julie Armstrong, Clerk of Court for Charleston County; Wishart, Norris, Henninger & Pittman, P.A. ("WNHP"); and Wade Harrison, an attorney associated with WNHP. The plaintiff sued the individual

---

[1] Williams was dismissed from the action by the plaintiff on October 9, 2008.

defendants both in their personal and official capacities. The plaintiff seeks damages as well as equitable relief.

All defendants except Cannon filed motions to dismiss the amended complaint. The plaintiff was provided copies of the motions and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). The plaintiff opposed all the motions. Hence, it appears consideration of the motions is appropriate.

## **STANDARD OF REVIEW UNDER FED.R.CIV.P. 12(b)(6)**

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the complaint. Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994), *cert. denied*, 115 S.Ct. 1956 (1995). Importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). Such motions "should be granted only in very limited circumstances." Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989). A court considering a Rule 12(b)(6) motion must accept as true all of the plaintiff's factual allegations and all favorable inferences that may reasonably be drawn from those allegations. See, Mylan Lab., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993), *cert. denied*,

114 S.Ct. 1307 (1994). Only then, it must appear certain that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged before a motion to dismiss can be granted. Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).

Furthermore, when as here, a Rule 12(b)(6) motion is testing the sufficiency of a civil rights complaint, "we must be especially solicitous of the wrongs alleged" and "must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." Harrison v. United States Postal Serv., 840 F.2d 1149, 1152 (4th Cir. 1988) (internal quotation marks omitted); see also, Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 (1984).

Although the court must assume that the plaintiff can prove all of the facts alleged in her complaint, "'it is not ... proper to assume that [the] plaintiff[ ] can prove facts that [she has] not alleged or that the defendants have violated the ... law[ ] in ways that have not been alleged.'" Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 221 (4th Cir. 1994) (quoting Associated Gen. Contractors v. California State Council of Carpenters, 459 U.S. 519, 526 (1983)).

Recently the United States Supreme Court held that to survive a 12(b)(6) motion to dismiss for failure to state a claim

upon which relief can be granted, factual allegations set forth
in a complaint must be sufficient to raise a right to relief
above the speculative level, on the assumption that all the
allegations in the complaint are true even if doubtful in fact.
Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007).

Therefore, once a claim has been adequately stated, it may
be supported by establishing any set of facts consistent with the
allegations in the complaint. Goodman v. Praxair, Inc., 494 F.3d
458, 466 (4th Cir. 2007) citing Twombly. While a complaint does
not have to include detailed factual allegations, a plaintiff's
obligation to provide the grounds for his entitlement to relief
requires more than labels and conclusions. Without including
some factual allegations in her complaint, a plaintiff cannot
satisfy his obligation to provide fair notice of the nature of
his claims and the grounds on which those claims rest. Atlantic
Corp. v. Twombly, 127 S.Ct. 1955, 1965, n. 3 (2007).

Further, in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), the
Court expanded on its holding in Twombly. "To survive a motion
to dismiss a complaint must contain sufficient factual matter,
accepted as true, to state a claim to relief that is plausible on
its face." Id. at 1949 (internal citations omitted). The
plausibility standard is higher than a probability requirement.
"Where a complaint pleads facts that are merely consistent with a
defendant's liability, it stops short of the line between

possibility and plausibility of entitlement to relief." Id. (internal citations omitted). The Court concluded "[o]ur decision in Twombly expounded the pleading standard for "all civil actions." Id. at 1953.

This court has applied the Twombly pleading requirements in a number of cases. In Gardner v. Jones Apparel Group, Inc., 2008 WL 2943205, (D.S.C. July 30, 2008), the court held:

> A Rule 12(b)(6) motion should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of its claims that entitles it to relief. Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). It is well settled that a pleading is sufficient if it contains a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A complaint is not required to set forth heightened fact pleading of specifics, "but only enough facts to state a claim for relief that is plausible on its face. [Where the plaintiff fails to nudge its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

See also, Ashley II of Charleston, LLC v. PCS Nitrogen, Inc., 2008 WL 2462862, (D.S.C. Jun 13, 2008; May v. Peninger, 2008 WL 509470, (D.S.C. Feb 22, 2008); Aldana v. RJ Reynolds Tobacco Co., 2007 WL 3020497 (D.S.C. Oct 12, 2007; Milton P. Demetre Family Ltd. Partnership v. Boltin, 2007 WL 3020476 (D.S.C. Oct 11, 2007); Crossman v. Chase Bank USA NA, 2007 WL 2702699 (D.S.C. Sept 12, 2007).

6

## BACKGROUND

This matter arises out of a South Carolina family court case wherein the plaintiff was found to be in arrears in his child support for his two minor children. Plaintiff alleges he and his then wife divorced in the state of Pennsylvania and he was directed to pay child support directly to her. Plaintiff's ex-wife was granted primary placement by the Pennsylvania court, and she moved to Charleston, South Carolina, with the children. Plaintiff subsequently moved to Charleston to be closer to his children.

Plaintiff alleges that on January 21, 2004, SCDSS served him with "a notice of Gross Arrears, a Notice of Registration of the Foreign Support Order for Enforcement, a notice of a scheduled hearing to contest arrears, and a 20-day notice to contest foreign registration." Am. Complaint pg. 8. Plaintiff requested a hearing to contest the registration of the foreign support order. According to the plaintiff, SCDDS attorney Magera "intercepted and/or never filed the motion to contest registration". Am. Complaint pg. 12.

Plaintiff claims that he was threatened, coerced, and ordered to make all future child support payments through the Charleston County Courts. Plaintiff made the payments through the Charleston County Court but was still held in arrears.

Plaintiff was advised by the SCDSS, apparently by mail, that they would seize his assets, revoke his licenses and passports, and destroy his credit history in the letters which plaintiff refers to as "DSS destroy letters." Plaintiff alleges his creditors began calling and his business credit rating (Plaintiff was self-employed at the time) was "shut down." Plaintiff indicates his situation led him to become depressed, anxious, and fearful. Additionally, the plaintiff's vehicle and a recreational vehicle which he had been living in were repossessed. Magera eventually had plaintiff's "'false arrears' zero balanced" in October 2004, but the plaintiff was not given credit for the overpayments he claims he made. Plaintiff alleges that Magera violated his First, Fourth, Fifth, Seventh, Eighth, Ninth, and Fourteenth Amendment rights.

Plaintiff also alleges he is paying more child support than the South Carolina guidelines require him to pay. Plaintiff has never appealed any of the court rulings of which he complains in this case because he is unable to pay an attorney.

Plaintiff's last payment to the Charleston County Clerk of Court Defendant Julie Armstrong was made in August 2004, the same month Plaintiff's ex-wife and the minor children moved to North Carolina. The Pennsylvania child support order was registered in North Carolina for enforcement once his ex-wife moved to that state. Plaintiff moved to North Carolina and found employment

but the company eventually went out of business. Plaintiff was found in gross arrears by a North Carolina family court, and as a result he was under "such a strain that he suffered from a five-day period of 'depressive coma' and nearly died." Am. Complaint pg. 19.

The Pennsylvania family court also believed that the plaintiff was in arrears in his child support payments. Plaintiff alleges that the Pennsylvania court had no records of enforcement from either North or South Carolina.

Plaintiff states he was unable to find any other employment in North Carolina and moved to Clarendon County South Carolina in December 2004. The plaintiff sold his last remaining asset and rented a single-wide trailer. Plaintiff claims he was mentally disabled with severe depression. He was unable to find work due to his poor credit rating, and also due to the fact that his resume showed he once was earning $180,000.00 a year. Plaintiff alleges employers did not want to hire a person who once worked at the World Trade Center, but was applying for a temporary job at the local library.

Eventually Plaintiff was served with papers requiring him to attend "Order to Show Cause" hearings in both North and South Carolina. Plaintiff alleges he attended both hearings. Since the plaintiff had previously received a "zero balance" from the

State of South Carolina, but was not given credit for his overpayments, Plaintiff alleges he began to accrue actual arrearages based on an income level he no longer had, and had not had, since he lived in Pennsylvania. Plaintiff claims the North Carolina court set the matter aside until South Carolina had ruled on its Order to Show Cause.

Plaintiff requested and was given a hearing in October 2005 in the South Carolina family court before Defendant Judge Wright Turbeville. The judge denied his request for a jury trial and Plaintiff believes that denial violated his constitutional rights. According to the complaint, at the hearing Magera, representing SCDSS, explained to the Court that the Pennsylvania support order was initially registered in South Carolina in January 2004. Magera told the court that, at that time, the plaintiff filed a late objection to the registration but the matter was allowed to be heard. The arrearage was struck at that hearing, even so the plaintiff still owed $29,762.70. Magera told the judge that because the arrearage had been set aside there was "no issue" as it pertained to registration. Magera therefore asked the court to dismiss the motion to contest registration, to issue a bench warrant for failure to pay, and order that Plaintiff pay through the Clerk of Court.

According to the complaint, the judge ordered the SCDSS to obtain Plaintiff's medical records and work out a solution with

him. When the order from the October 2005 hearing was entered it showed that Judge Turbeville had ruled that the plaintiff had agreed that he had a duty to support his children, however, the judge was unsure if plaintiff was able to do so. Plaintiff was ordered to sign a release so that SCDSS could obtain his medical records, including any psychological evaluations that were available.

Plaintiff attended the hearing with a friend and Plaintiff alleges that Magera made a verbal threat to Plaintiff's life to the friend after the hearing. Upon returning to Clarendon County, the friend arranged for a four (4) day intensive clinic in Orlando to help the plaintiff, but the plaintiff alleges he continued to fear for his life. The plaintiff indicates he phoned the Governor, the State Attorney General, and (then) Solicitor Hosington to report "the crime of harassment and stalking, but the calls were never returned."

Plaintiff scheduled a meeting with his psychiatrist when he received the release forms in the mail. The psychiatrist stated it was highly unusual to send a blanket request and he said he could not fill out the form without knowing what the SCDSS wanted. Nonetheless, Plaintiff complied with the court order and signed the releases.

Plaintiff challenges the order from the court hearing

because he did, in fact, contest the registration. Plaintiff agrees that there was to be a determination of his ability to pay child support after all medical records were received. Plaintiff states that no meeting took place between himself and the SCDSS. Plaintiff alleges Magera intentionally set another Rule to Show Cause hearing and conspired with Defendant Judge Garfinkel to kill the plaintiff. Plaintiff contacted the Department of Justice in Washington, D.C., which put him in touch with the Federal Bureau of Investigations (FBI). The plaintiff faxed information to the FBI but he did not receive any assistance. He also sent a copy of the same information to the Director of the FBI.

Another family court hearing took place in April 2006 in which the plaintiff was sentenced to six (6) months in jail for failure to pay child support. Plaintiff alleges he was locked in a "cold cell" located off the main booking area at the Charleston county Detention Center. According to the complaint, the cell has a large refrigeration vent located near the ceiling above the entrance door, and a "booster fan" was located behind the vent to blow "super chilled" air into the cell. Plaintiff states he was locked in the "cold cell" for three days without water, food, bedding, blankets, or the necessary clothing to protect him against hypothermia. His repeated requests for a jacket were denied. Plaintiff then states:

Within approximately 8-12 hours Plaintiff had fallen into stage 3 hypothermic shock; Plaintiff had informed a Jailer-Defendant that Plaintiff was hypothermic by stating that his body was unable to shiver to keep itself with heat. Plaintiff asked the Jailer-Defendant to notify the nurse. The Jailer-Defendant replied, 'I will do no such thing.'

Plaintiff suffered tremendous pain, slow loss of use of limbs, violent shivering, painful muscle stiffening, the horror and fright that death was imminent, and the realization that Defendant Magera and Defendant Garfinkel planned his death so quickly and by means of severe hypothermia leading to death by heart failure or brain death, whichever came first.

Within approximately 8-12 hours, Plaintiff's brain began to shut down and Plaintiff suffered increasing memory loss until he lost all thought and lost consciousness. Plaintiff slipped into an unconscious hypothermic coma. Plaintiff believed he died.

Am. Complaint pg. 97-98.

Plaintiff alleges that Defendant "Cannon knew that the cold cell existed as a place of punishment and that prolonged exposure to the elements without protections or duty of care would result in death by hypothermia." Am. Complaint pg. 78.

Plaintiff was removed from the cold cell after the third day by deputies and placed on a mat with a blanket. A subsequent guard shift was unaware of the plaintiff's predicament and beat him because he was unable to stand, move his limbs, or recite his name. Plaintiff claims that "they" soon realized something was wrong and took him to the jail's hospital where he was placed on suicide watch. Plaintiff alleges that he was "wracked with

agonizing pain and was suffering from ventricular tachacardia" as his body warmed. Am. Complaint pg. 101.

According to the plaintiff, the next day the doctor "realized that [plaintiff] was still in danger of death and was in critical conditions" and told the plaintiff that he would get help. An unnamed man tried to get the plaintiff to sign a form but the plaintiff could not read the form because the jailers refused to give him his glasses. "The medical staff of CCS filled out a 'refusal' form and left him on the floor of the suicide watch room for six (6) days without a blanket." Id.

Plaintiff alleges the guards, Cannon, and the CCS[2] were engaged in a conspiracy to commit murder or involuntary manslaughter, violated his constitutional rights as well as state law by not providing him with a blanket and by "torturing" him. Plaintiff admits that he does not know if Defendants Garfinkle and Magera gave orders to the jailers to treat him as they did, "However, the mathematical probability that the Jailer-Defendants just decided on their own accord to execute the plaintiff ... is deminimus." Am. Complaint at 103.

Plaintiff spent seventy-three (73) days in the Charleston County jail before an attorney helped secure his release pursuant

---

[2] CCS is the company which employed the medical care personnel who provided medical care at the Charleston County Detention Center.

to Plaintiff's agreement that: the plaintiff would not sue anyone having to do with the family court case, the plaintiff would admit he owed child support in arrears and would make a partial payment to reduce the balance, the plaintiff would seek psychiatric help, and the plaintiff would leave the state by airplane.

Plaintiff's father paid $20,000.00 to the Court. The jail psychologist and the plaintiff's personal psychologist agreed that the plaintiff did not need further treatment. The agreement was sent to the plaintiff at the jail, and plaintiff alleges he signed it under duress. Plaintiff also alleges the written agreement is "void on several accounts". He maintains the State of South Carolina does not have jurisdiction over him and never did. Additionally, Plaintiff alleges he was not competent to enter into a contract at that time.

At the time this action was brought it appears there was a pending state court case brought in North Carolina against the plaintiff by his ex-wife for outstanding child support payments. According to the complaint, Plaintiff's ex-wife has retained the firm of Wishart Norris Henninger & Pittman, a named defendant here. Plaintiff also named as a defendant Wade Harrison, an attorney with that firm and who represents Plaintiff's ex-wife in the proceedings.

Plaintiff wrote an approximately one hundred and fifty

(150) page book entitled "The Public Trust: Statement of Fact"

which he says is the official testimony and evidence for this

case, and which he attached to his amended complaint. He raises

multiple counts in his complaint which include, but are not

limited to, a federal RICO claim, federal criminal charges,

§ 1983 claims, state common law claims such as medical

malpractice, negligence, breach of fiduciary duty, defamation,

fraud, and extortion.

## DISCUSSION

A review of the record and relevant case law reveals that

all claims should be dismissed except claims against Sheriff Al

Cannon.

As an initial matter, the Court notes that Plaintiff has

listed himself as a plaintiff, both on his own behalf and as

"next friend of his two minor children DAB and APB." The federal

courts have consistently rejected attempts at third-party lay

representation." Herrera-Venegas v. Sanchez-Rivera, 681 F. 2d

41, 42 (1st Cir. 1982). Specifically, a non-attorney parent

representing himself or herself in a federal court action is

prohibited from representing his or her minor children. See,

Cheung v. Youth Orchestra Foundation, 906 F.2d 59, 61 (2nd Cir.

1990); Johns v. County of San Diego, 114 F. 3d 874, 876 (9th Cir.

16

1997); Meeker v. Kercher, 782 F.2d 153 (10th Cir. 1986); Deving v. Indian River County School Bd., 121 F. 3d 576, 582 (11th Cir. 1997); see also, Wenger v. Canastota Cent. Sch. Dist., 146 F.3d 123, 124-5 (2d Cir. 1998) (relying on the common-law rule against non-attorney parents representing their children pro se in civil suits); and Gallo v. USA, 331 F. Supp. 2d 446 (E.D.Va. 2004) (mother may not represent daughter pro se but must retain a lawyer).

The prohibition of pro se parents representing minor children exists to protect the rights of minor children, who cannot represent themselves in court, because parents unskilled in the law are not likely to adequately protect a child's rights in pursuing litigation on the child's behalf. See, Brown v. Ortho Diagnostic Systems, Inc., 868 F.Supp. 168 (E.D. Va. 1994)

Consequently since the father of the minor children is attempting to represent the children, it is recommended that all claims brought on behalf of the minor children be dismissed without prejudice, and that the minors be dismissed as plaintiffs to this action.

## Claims against the State of South Carolina and State Defendants in their official capacities sued for damages

The Eleventh Amendment provides, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United

17

States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Under the Eleventh Amendment, ... neither a State nor its officials in their official capacity may be sued for damages in federal court without their consent." Gamache v. Cavanaugh, 82 F.3d 410 at 1 (4th Cir. 1996) (unpublished table decision); see also, LCS Servs., Inc. v. Hamrick, 948 F.2d 1281 at 2 (4th Cir. 1991) (unpublished table decision) ("The Eleventh Amendment precludes federal courts from hearing suits against states."). The State of South Carolina has not consented to suit in federal court. See, S.C. Code § 15-78-20(e) ("Nothing in this chapter is construed as a waiver of the state's or political subdivision's immunity from suit in federal court under the Eleventh Amendment to the Constitution of the United States nor as consent to be sued in any state court beyond the boundaries of the State of South Carolina."); see also, Stewart v. Beaufort County, 481 F.Supp. 2d 483, 493 (D.S.C. 2007); Pringle v. S.C. Retirement Sys., 2007 WL 295626 at 5 (D.S.C. Jan. 29, 2007).

Furthermore, an agency of state government is a part of the state for purposes of the Eleventh Amendment and is therefore "immune from suit under 42 U.S.C. § 1983 under the Eleventh Amendment to the United States Constitution." See, Collins v. S.C. Dep't of Corr., 2007 WL 1381522 at 2 (D.S.C. May 4, 2007); see also, Florida Dept. of Health & Rehabilitative Servs. v.

Florida Nursing Home Assn., 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); Ford Motor Co. v. Dept. of Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). Under the Eleventh Amendment, therefore, this Court has no jurisdiction to consider a § 1983 suit against the State of South Carolina.

Likewise, Eleventh Amendment protection from damages suits also applies to state employees acting in their official capacity as "arms of the State." Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (Stevens, J., dissenting). The Eleventh Amendment, however, generally does not bar suits for damages against state officers, so long as those officers are sued in their individual capacities. See, e.g., Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). "The course of proceedings" in such cases typically will indicate the nature of the liability sought to be imposed. Id. at 167 n. 14 (quoting Brandon v. Holt, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985)). Official capacity suits are those that entertain the constitutionality of an entity's policy or custom. Graham, 473 U.S. at 166.

Therefore, the following state officials sued in their official capacities for damages should be dismissed from the action: John M. Magera, Kathleen M. Hayes, Hon. R. Wright Turbeville, Hon. Joycelyn B. Cate, Hon. Paul W. Garfinkel, and

Julie J. Armstrong.

## Defendants South Carolina Family Court Judges

### in their individual capacities

Plaintiff's claims against Hon. R. Wright Turbeville, Hon. Joycelyn B. Cate, and Hon. Paul W. Garfinkel, who are all South Carolina Family Court Judges, arise from his assertion that he has been denied his right of "honest access to the Courts" and his right to a jury trial. He asserts that he has been psychologically and emotionally damaged as a result of incorrect rulings that he was in arrears on the child support payments and that, while detained at the Charleston County Detention Center, he was subjected to "cold cell" punishment, and that a number of the defendants conspired to have jail officials freeze him to death.

Plaintiff named the these judges as defendants in their individual capacities as well as in their official capacities discussed infra. Plaintiff contends that at his March 2, 2005, child support hearing, the Honorable Jocelyn B. Cate violated his constitutional rights in denying him a trial by jury.[3] Judge Cate advised Plaintiff to obtain the advice of an attorney to which Plaintiff responded by repeatedly writing letters to Judge Cate

---

[3] "All hearings in the family courts shall be conducted by the court without a jury." See Rule 9(a), South Carolina Rules of Family Court.

after the hearing. (Amended Complaint, pp. 21-26).

Next, the plaintiff alleges that on October 18, 2005, he
appeared before Judge Wright Turbeville for a "mini-trial."
Judge Turbeville observed Plaintiff's emotional state and ordered
that the SCDSS obtain his medical records and sit down with him
to attempt to work out a solution to his arrearage issue. Am.
Complaint pg. 27. Plaintiff acknowledged that Judge Turbeville
attempted to help him and sets forth parts of the transcript from
the Turbeville hearing in his Amended Complaint. Judge
Turbeville declined to rule on whether or not the plaintiff was
in willful contempt of court without having his medical records
and psychiatric record. (Am. Complaint p. 62). However,
Plaintiff takes issue with Judge Turbeville's request that the
DSS attorney, codefendant John Magera, prepare an Order to obtain
these records. (Am. Complaint, pp. 64-65).

Plaintiff next appeared before Judge Paul Garfinkel for
consideration of the child support arrearage. He contends that
SCDSS conspired with Judge Garfinkel in setting the April 3,
2006, hearing. Am. Complaint pp. 80-81. A review of the
transcript which the plaintiff made part of his amended complaint
reveals that Judge Garfinkel held the plaintiff in contempt.
Still, Judge Garfinkel asked about the medical release forms and
invited Plaintiff to present a defense. Am. Complaint pp. 90-93.
Plaintiff further explains that Judge Garfinkel "zero balanced"

his arrearages but failed to give him credit for the child

support overpayments that he claims to have made.[4]

These defendants in their individual capacities should be

dismissed on the basis of absolute judicial immunity. In Wingo

v. Spartanburg County Detention Center, 2008 WL 4280378, (D.S.C.

2008) it was explained that:

> South Carolina Family Court Judges are judges in
> the State of South Carolina's unified judicial
> system. See, e.g., In the Matter of Mendenhall,
> 316 S.C. 196, 447 S.E.2d 858 (1994). Since Judge
> Brown was acting in a judicial capacity as a
> Family Court Judge at all relevant times in this
> case, he is immune from suit in this civil rights
> action. See, Mireles v. Waco, 502 U.S. 9, 112
> S.Ct. 286, 116 L.Ed.2d 9 (1991); Stump v.
> Sparkman, 435 U.S. 349, 351-364, 98 S.Ct. 1099, 55
> L.Ed.2d 331 (1978); Pressly v. Gregory, 831 F.2d
> 514, 517 (4th Cir. 1987) (a suit by South Carolina
> inmate against two Virginia magistrates); and Chu
> v. Griffith, 771 F.2d 79, 81 (4th Cir. 1985) ("It
> has long been settled that a judge is absolutely
> immune from a claim for damages arising out of his
> judicial actions."). See also, Siegert v. Gilley,
> 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277
> (1991) (immunity presents a threshold question

---

[4] Plaintiff also alleges that he "knows" that Judge
Garfinkel was "in" on an alleged "death threat" by Defendant
Magera, the DSS attorney handling the child support case.
Plaintiff also claims that while at the Charleston County Jail,
he was subjected to "cold cell" punishment and that officials at
the jail attempted to freeze him to death. He admits, however,
that he does not know how Magera or Judge Garfinkel would have
passed any "cold cell" punishment orders to the jail, or whether
they even did so at all. (Amended Complaint, pp. 103). In any
event, South Carolina law makes plain that these defendants would
have no authority over the administration of the Charleston
County Detention Center. See, S.C. Code § 24-5-10 (sheriff shall
have custody of the jail in his county); Henry v. Horry County,
334 S.C. 461, 514 S.E.2d 122 (1999).

> which should be resolved before discovery is even
> allowed); and Mitchell v. Forsyth, 472 U.S. 511,
> 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)
> (absolute immunity "is an immunity from suit
> rather than a mere defense to liability"). Accord
> Bolin v. Story, 225 F.3d 1234 (11th Cir. 2000)
> (discussing judicial immunity of United States
> District Judges and United States Circuit Judges).

To overcome the absolute immunity obstacle to suing the

judges, Plaintiff seeks a ruling here that the judges acted

without jurisdiction over his child support case. Plaintiff

asserts such a ruling would abrogate any judicial immunity from

suit. The court should decline his invitation because it has no

authority to do so. See, District of Columbia Court of Appeals

v. Feldman, 460 U.S. 462, 476-82, 103 S.Ct. 1303, 75 L.Ed.2d 206

(1983) (federal district court lacks authority to review final

determinations of state or local courts because such review can

only be conducted by the Supreme Court of the United States under

28 U.S.C. § 1257); See, Rooker v. Fidelity Trust Co., 263 U.S.

413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). Although the

Rooker-Feldman doctrine has been substantially limited by later

case law, such as Exxon-Mobil Corp. v. Saudi Basic Industr.

Corp., 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005), and

Davani v. Virginia Dept. of Transportation, 434 F.3d 712 (2006),

it is well settled that this federal court cannot set aside the

defendant judge's orders. Cf. Gurley v. Superior Court of

Mecklenburg County, 411 F.2d 586, 587-88 & nn. 2-4 (4th Cir.

1969) (federal district courts do not have jurisdiction to enter writs of mandamus directed at state courts). Moreover, since this case is a non-habeas civil action, this federal court must accord full faith and credit to the decisions of the Family Court for Charleston County, including the court's findings that its jurisdiction was proper. See, 28 U.S.C. § 1738 B; and 28 U.S.C. § 1738.

Plaintiff did not seek appeal from the family court orders of which he complains. Appeals of orders issued by lower state courts must go to a higher state court. Congress, for more than two hundred years, has provided that only the Supreme Court of the United States may review a decision of a state's highest court. See, 28 U.S.C. § 1257 (since 1988, such Supreme Court review is discretionary by way of a writ of certiorari and is not an appeal of right). In civil, criminal, and other cases, the Supreme Court of the United States has reviewed decisions of the Supreme Court of South Carolina that were properly brought before it under 28 U.S.C. § 1257 or that statute's predecessors. See, e.g., Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1991) (an example of a South Carolina Supreme Court case that was reviewed by the United States Supreme Court).

Further, in regard to Plaintiff's prayer for damages for harm resulting from Judge Garfinkel's order that Plaintiff serve

24

time for civil contempt (Am. Complaint pgs. 92-95), Plaintiff's

right of action has not accrued. See, Heck v. Humphrey, 512 U.S.

477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994):

> We hold that, in order to recover damages for allegedly
> unconstitutional conviction or imprisonment, or for other
> harm caused by actions whose unlawfulness would render a
> conviction or sentence invalid, a § 1983 plaintiff must
> prove that the conviction or sentence has been reversed on
> direct appeal, expunged by executive order, declared invalid
> by a state tribunal authorized to make such a determination,
> or called into question by a federal court's issuance of a
> writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages
> bearing that relationship to a conviction or sentence that
> has not been so invalidated is not cognizable under § 1983.
> Thus, when a state prisoner seeks damages in a § 1983 suit,
> the district court must consider whether a judgment in favor
> of the plaintiff would necessarily imply the invalidity of
> his conviction or sentence; if it would, the complaint must
> be dismissed unless the plaintiff can demonstrate that the
> conviction or sentence has already been invalidated.

Heck v. Humphrey, 512 U.S. at 486-487 (footnote omitted). See

also, Woods v. Candela, 47 F.3d 545 (2nd Cir. 1995) (litigant's

conviction reversed by state court in 1993; hence, civil rights

action timely filed); Treece v. Village of Naperville, 903

F.Supp. 1251 (N.D.Ill. 1995); and Smith v. Holtz, 879 F.Supp. 435

(M.D.Pa. 1995), affirmed, 87 F.3d 108 (3rd Cir. 1995). Until the

plaintiff's contempt or sentence is set aside, any civil rights

action based on the finding of contempt and sentence and related

matters will be barred because of the holding in Heck v.

Humphrey.

Additionally, regardless of the label Plaintiff may place on

this action, any challenge to the fact or duration of his confinement is properly treated as a habeas corpus claim.[5] See, Duncan v. Henry, 121 S.Ct. 2120, 2126 (2001) ("federal habeas corpus review may be available to challenge the legality of ... a state court order of civil contempt."); Leonard v. Hammond, 804 F.2d 838 (4th Cir. 1986) (holding that constitutional challenges to civil contempt orders for failure to pay child support were cognizable only in a habeas corpus action); Fernos-Lopez v. Figarella-Lopez, 929 F.2d 20, 21-22 (1st Cir. 1991) (petitioner jailed for failure to comply with order to pay spousal support would be in custody for habeas corpus purposes); Ridgway v. Baker, 720 F.2d 1409 (5th Cir. 1983) (habeas granted to civil contemptor imprisoned for nonsupport); Marshall v. Bowles, 2002 WL 31757631 (N.D.Tex. Dec. 2, 2002) (entertaining a challenge brought in a federal habeas petition under § 2241 to a state court's civil contempt order for failure to pay child support); see also, Prather v. Norman, 901 F.2d 915, 918-19 n. 4 (11th Cir. 1990) (per curiam); McKinnis v. Mosley, 693 F.2d 1054, 1057 (11th Cir. 1982). Any challenge to the contempt finding or the resulting detention should be dismissed.

_____

[5] The federal habeas corpus statutes require that before a federal court may consider a petition for writ of habeas corpus, the petitioner must first exhaust his state remedies by presenting to the state courts for consideration each issue upon which he seeks review in federal court. Rose v. Lundy, 455 U.S. 509 (1982); Picard v. Connor, 404 U.S. 270 (1971).

## Defendants Kathleen M. Hayes and John H. Magera in

## their individual capacities

Kathleen M. Hayes is the Director of the South Carolina Department of Social Services and John H. Magera is the attorney for the SCDDS Child Support Enforcement Division, and they are sued in their individual capacities as well as their official capacities, which official capacity was discussed supra. Both defendants in their individual capacities are entitled to be dismissed from this action.

Plaintiff makes no allegation that Hayes personally did anything to deprive him of constitutional rights, so she is entitled to dismissal. Even if Plaintiff sued Hayes under a respondeat superior vicarious liability theory, such theories are inapplicable in a civil rights action and should be dismissed. See, Monell v. Department of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Fisher v. Washington Metro. Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982).

Plaintiff's claims against Magera stem from his work on behalf of the DSS, the child support enforcement agency[6], and, as

---

[6] The Uniform Interstate Family Support Act, now codified at S.C. Code § 63-17-2900 et. seq., governs the plaintiff's family court matters. Pursuant to the Act, "the tribunals of this State are the family court and the support enforcement agency." See, former Code Section 20-7-970. The Act also sets forth the powers and duties of responding tribunals, see former Code Section 20-7-1045, and the duties of the support enforcement agency, see

such, he is entitled to absolute prosecutorial immunity under
Imbler v. Pachtman, 424 U.S. 409 (1976), and its progeny. As an
example, in Weller v. Department of Social Services for City of
Baltimore, 901 F.2d 387 (4th Cir. 1990), the plaintiff alleged
that the attorney for the Department of Social Services of
Baltimore City offered false evidence regarding alleged child
abuse to a court in an adjudicatory hearing. The Court held that
even if such allegations were true, they did not state a claim
for damages under § 1983 as a DSS attorney is entitled to
absolute immunity for his prosecutorial role. Id. at 397 n.11.

Plaintiff has also asserted that Magera conspired with other
defendants to violate his constitutional rights. This claim is
wholly conclusory and is subject to dismissal on that ground
alone. Young v. Biggers, 938 F.2d 565 (5th Cir. 1991) ("civil
rights plaintiff must plead operative facts; bald allegations of
a conspiracy are insufficient."). Further, the claim of
conspiracy itself is also barred by Imbler v. Pachtman. See also,
Dory v. Ryan, 25 F.3d 81, 83 (2nd Cir. 1994) (absolute
prosecutorial immunity protects a defendant accused of conspiring
to present false evidence at trial); Kimberlin v. United States
Dept. of Justice, 788 F.2d 434 (7th Cir. 1986) (affirming district
court's holding that a Bivens conspiracy claim must fail where

_____

former Code Section 20-7-1055.

there is no constitutional violation).

Once again, to the extent that Plaintiff's claims against these defendants arise from the findings or rulings of the South Carolina Family Courts, they are barred by the Rooker-Feldman doctrine. Plaintiff's complaint, claiming a right to damages and other relief for alleged torts by various participants in his family court matters does not alter the fact that Plaintiff is, in reality, attempting to have this court review the family court proceedings and overturn the results of his case. Plaintiff claims that he was injured by the result in the family court case, and to rule in favor of Plaintiff on his claims would, necessarily, require this court to overrule, or otherwise find invalid, various orders and rulings made in the state court. Such a result is prohibited under the Rooker-Feldman Doctrine. Davani v. Virginia Dept. of Transportation, 434 F.3d 712, 719-20 (4th Cir. 2006); see Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. at 293-94; Jordahl v. Democratic Party of Va., 122 F.3d at 201.

Lastly, Plaintiff seeks to assert a constitutional claim alleging Magera verbally abused him and such claim is also without merit and should be dismissed. The Fourth Circuit has held that verbal harassment without allegation of physical harm resulting therefrom fails to state a constitutional violation. See, Cole v. Cole, 633 F.2d 1083 (4th Cir. 1980). "Even extreme

verbal abuse typically is insufficient to establish a
constitutional deprivation." Abeyta v. Chama Valley Indep.
School District, 77 F.3d 1253, 1256 (10th Cir. 1996); Collins v.
Cundy, 603 F.2d 825, 827 (10th Cir. 1979)(holding that verbal
abuse where sheriff laughed at prisoner and threatened to hang
him did not state a constitutional deprivation actionable under §
1983).

## Defendant Julie J. Armstrong, Charleston County Clerk of Court

Plaintiff alleges that Julie Armstrong, Charleston County
Clerk of Court, "stole and embezzled" a 5% fee from his support
payments and "falsely held [him] in arrears." Am. Complaint pg.
9. She is also entitled to be dismissed from this action on
immunity grounds.

County Clerks of Court, though elected by the voters of a
County, are also part of the State of South Carolina's unified
judicial system. See, S.C. Const. Article V, § 24; § 14-1-40,
South Carolina Code of Laws (as amended); and § 14-17-10, South
Carolina Code of Laws (as amended). The Clerk of Court for
Charleston County has quasi-judicial immunity because the
plaintiff's allegations show that this defendant was following
rules of a Court, or was acting pursuant to authority delegated
by a Court to Clerk's Office personnel. See, Cook v. Smith, 812
F. Supp. 561, 562 (E.D.Pa. 1993); and Mourat v. Common Pleas

Court of Lehigh County, 515 F. Supp. 1074, 1076 (E.D.Pa. 1981).

In Mourat, the district court, in a ruling from the bench,

rejected claims similar to those raised by the plaintiff here:

> The clerk, Joseph Joseph, is also immune from
> suit. In the "recognized immunity enjoyed by
> judicial and quasijudicial
>
> officers, including prothonataries, there exists
> an equally well-grounded principle that any public
> official acting pursuant to court order is also
> immune." We have here quoted from Lockhart v.
> Hoenstine, 411 F.2d 455, 460 (3d Cir. 1969) (cert.
> denied, 396 U.S. 941 (1969)). If he failed to act
> in accordance with the judicial mandate or court
> rule, he would place himself in contempt of court.
> See Zimmerman v. Spears, 428 F. Supp. 759, 752
> (W.D. Tex.), aff'd, 565 F.2d 310 (5th Cir. 1977);
> Davis v. Quarter Sessions Court, 361 F. Supp. 720,
> 722 (E.D.Pa. 1973); Ginsburg v. Stern, 125 F.
> Supp. 596 (W.D.Pa. 1954), aff'd per curiam on
> other grounds, 225 F.2d 245 (3d Cir. 1955) sitting
> en banc.

Mourat at 1076.

Clerk Armstrong was acting pursuant to the authority

provided to her by statute and by court order. See, Code S.C. §

20-7-1440 (1976)(repealed and recodified as part of the South

Carolina Children's Code, § 63-3-370; ratified on June 16,

2008)(providing that "in actions for support for the spouse or

dependent children, when paid through the court or through a

centralized wage withholding system operated by the Department of

Social Services and not directly, the court shall assess costs

against the party required to pay the support in the amount of

five percent of the support paid, which costs must be in addition

to the support money paid").

The doctrine of absolute quasi-judicial immunity has been adopted and made applicable to court support personnel because of "the 'danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts[.]'" Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir. 1992). See also, Ashbrook v. Hoffman, 617 F.2d 474, 476 (7th Cir. 1980) (collecting cases on immunity of court support personnel) .

In short, Plaintiff objects to the manner in which the County Clerk's office collects and disburses child support payments. The Clerk of Court, however, was following a court order, and was obviously acting pursuant to authority delegated by statute to Clerk's Office personnel. As such, Plaintiff's allegations that the Clerk of Court has been "unjustly enriched" or "breached a fiduciary duty" or committed a RICO violation, or violated his civil rights, are without merit.

## Defendants Charleston County, Charleston County Council,

### and McRoy Canterbury Jr.

These defendants should also be dismissed. There are no allegations in the complaint that Charleston County Administrator McRoy Canterbury personally did anything to the plaintiff. It appears Plaintiff sued Canterbury under a respondeat superior

vicarious liability theory and such theories are inapplicable in a civil rights action and should be dismissed. See, Monell v. Department of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Fisher v. Washington Metro. Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982).

Likewise there are no specific allegations that Charleston County or the Charleston County Council ever interacted with the plaintiff. To the extent the plaintiff sued Charleston County and its Council because he believes they supervise the family courts, he is wrong. Under the current version of Article V, Section 1, the Supreme Court of South Carolina, not Charleston County, retains the sole authority to supervise courts in Charleston County. See, Wingo v. Spartanburg County Detention Center, 2008 WL 4280378, (D.S.C. 2008)(South Carolina Family Court Judges are judges in the State of South Carolina's unified judicial system); Spartanburg County Dept. of Social Services v. Padgett, 296 S.C. 79, 370 S.E.2d 872, 875-76 & n. 1 (1988).

To the extent Plaintiff sued Charleston County because of the alleged unconstitutional jail conditions, Charleston County has no authority over how the Sheriff supervises the detention center. See, S.C. Code § 24-5-10 (sheriff shall have custody of the jail in his county); Henry v. Horry County, 334 S.C. 461, 514 S.E.2d 122 (1999); Allen v. Fidelity & Deposit Co. of Maryland, Inc., 515 F. Supp. 1185 (D.S.C. 1981); Roton v. Sparks, 270 S.C.

637, 244 S.E.2d 214 (1978).

In any event, Plaintiff has not alleged any unconstitutional action on the part of Charleston County or its Council, nor has he alleged the existence of any unconstitutional "policy or custom" which may have caused the alleged injuries discussed in his Amended Complaint. See, Jordan by Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994)(Section 1983 plaintiff seeking to impose liability on a municipality must adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of rights); Spell v. McDaniel, 824 F.2d 1380, 1384 (4th Cir. 1987) citing Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978).

Consequently, neither Charleston County nor its Council is a proper party defendant because neither has authority over the unified judicial system or the Sheriff and are not responsible for the alleged violations of the plaintiff's rights during the relevant times at issue in this case.

## Defendant Correct Care Solutions, LLC

Plaintiff named as a defendant Correct Care Solutions, LLC, (CCS) complaining of its employees' failure to provide him constitutionally adequate care and its employees' "denial of care." Am. Complaint pg. 144. Since this claim is based on the

actions of the defendant's employees, Plaintiff's claim fails because § 1983 claims against corporate defendants may not be premised on principles of respondeat superior. See, e.g., Smedley v. Corrs. Corp. of Am., 175 Fed. App'x 943, 946 (10th Cir. 2005). A private corporation performing a government function is liable under § 1983 only where a plaintiff shows "1) the existence of a ... policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged." Hinton v. City of Elwood, Kan., 997 F.2d 774, 782 (10th Cir. 1993); Smedley, 175 Fed. App'x at 946 (applying § 1983 standards for municipal liability to a corporation performing a government function). A policy is a formal statement by the private corporation. See, e.g., Gates v. Unified School Dist. No. 449 of Leavenworth County, Kan., 996 F.2d 1035, 1041 (10th Cir. 1993). A custom is a persistent, well-settled practice of unconstitutional misconduct by employees that is known and approved by the corporation. Id.

In this case, Plaintiff's allegations do not identify a policy or custom of CCS and a direct causal link between that policy or custom and his alleged injuries. Without a policy or custom and causation defendant CCS may not be held liable under § 1983 and should be dismissed.

Plaintiff also brought claim denominated "denial of care"[7] against CCS which should be dismissed for failure to file an affidavit of an expert witness with his complaint as required by S.C. Code § 15-36-100(B) which requires that:

[I]n an action for damages alleging professional negligence against a professional licensed by or registered with the State of South Carolina and listed in subsection (G) ..., the plaintiff must file as part of the complaint an affidavit of an expert witness which must specify at least one negligent act or omission claimed to exist and the factual basis for each claim based on the available evidence at the time of the filing of the affidavit.

It is undisputed that Plaintiff did not obtain and file such an expert affidavit with his complaint or amended complaint. Nor did he address CCS's motion to dismiss on this ground in his opposition. As a result of the Plaintiff's failures to secure an expert affidavit, the Plaintiff cannot press a state law cause of action for medical malpractice against this defendant.

### Defendants Wishart Norris Henninger and Pittmann, P.A.

### and Wade Harrison

Additionally, Plaintiff should not be allowed to proceed on his claims against attorney Wade Harrison, or the law firm to which he belongs, Wishart, Norris, Henniger, and Pittman, P.A. (WNHP).

---

[7] "Denial of care" is not a recognized tort and in this context it appears to be a claim of medical malpractice under South Carolina common law.

The only count in the Amended Complaint which relates to WNHP or Harrison is count 11 entitled "August 2006 - December 2007 - Gathering Evidence, Harrasment and Fraud by The Firm and Wade Harrison, Writing the Book: The Public Trust: Statement of Fact. (240 Pages, Spiral Bound). The Book titled as Exhibit L". Count 11 simply fails to state any recognizable claim for relief. Moreover, while Plaintiff has alleged a long detailed set of facts, few of the facts alleged relate to WNHP or Harrison, and it is difficult to discern from the factual allegations what specific claims Plaintiff intended to bring against WNHP and Harrison.

Count 11 merely makes conclusory statements that WNHP filed a "false and fraudulent action against the Plaintiff" demanding child support arrearages. Count 11 further states that:

> Harrison perpetrated a fraud upon the courts and upon the Plaintiff because there was no money owned from South Carolina and Wade Harrison knew that because he was the one that saw to it that any remaining balances in South Carolina were zero balanced and case SC 04DR-I 0-193 was already closed. The Firm knew that the Plaintiff was a vulnerable person and proceeded to cause intentional infliction of emotional distress with full knowledge of what they were doing. The Plaintiff's father had fired The Firm and The Firm were seeking revenge via harassment with a knowingly fraudulent action.

Amended Complaint, pp. 146-147.

While WNHP and Harrison represent the plaintiff's ex-wife in a state court proceeding filed against the plaintiff in North

Carolina, they have not acted under color of state law as required to state a § 1983 cause of action. In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that: (1) the defendant(s) deprived him of a federal right, and (2) did so under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980). An attorney, whether retained, court-appointed, or a public defender, does not act under color of state law, which is a jurisdictional prerequisite for any civil action brought under 42 U.S.C. § 1983. See, Deas v. Potts, 547 F.2d 800 (4th Cir. 1976) (dismissing private attorney); Hall v. Quillen, 631 F.2d 1154, 1155-1156 & nn. 2-3 (4th Cir. 1980) (court-appointed attorney); and Polk County v. Dodson, 454 U. S. 312, 317 - 324 & nn. 8-16 (1981) (public defender).

The district court in Hall v. Quillen, supra, had disposed of the case against a physician and a court-appointed attorney on grounds of immunity. In affirming the district court's order, the Court of Appeals, however, indicated that lower courts should first determine whether state action occurred:

> But immunity as a defense only becomes a relevant issue in a case such as this if the court has already determined affirmatively that the action of the defendant represented state action. This is so because state action is an essential preliminary condition to § 1983 jurisdiction, and a failure to find state action disposes of such an action adversely to the plaintiff.

<u>Hall v. Quillen</u>, 631 F.2d at 1155 (citations omitted); see also <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 936 (1982) ("Careful adherence to the 'state action' requirement also avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.").

Plaintiff argued that these attorneys are state actors because Harrison is an officer of the court and also because of Plaintiff's wholly conclusory allegation that they conspired with the South Carolina Judges and other defendants who are state actors.

First, "It is well-settled that an attorney engaged in civil litigation on behalf of a private client cannot be said to be acting under color of state law in the absence of specific claims of unlawful cooperation with state officials." <u>Gambino v. Rubenfeld</u>, 179 F.Supp. 2d 62, 69-70 (E.D.N.Y., 2002) (dismissing §1983 claim for failure to prove that defendant attorney acted under color of law). Second, an attorney is not a "state actor" simply because the state has granted him a law license. <u>Id</u>. Moreover, "Private lawyers do not act "under color of state law" merely by making use of the state's court system." <u>Fleming v. Asbill</u>, 42 F.3d 886, 890 (4th Cir. 1994). Plaintiff's allegation of state action based on an attorney's status as an officer of the court in unavailing.

Second, the complaint includes only conclusory statements that these defendants conspired with state actors, which is similar to the conclusory allegation in Twombly that the defendants had conspired to restrain trade. Like the plaintiffs in Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007), the plaintiff here was required to provide some factual allegations to support his legal conclusions. Plaintiff's civil rights claims against these defendants should be dismissed.

Likewise, Plaintiff's state law claims should be dismissed. Plaintiff's claim against Defendants Harrison and WNHP makes assertions which include terms such as "fraud" and "abuse of process" and "intentional infliction of emotional distress" related to Harrison's representation of the plaintiff's ex-wife in a state court domestic matter in North Carolina, but do not provide specifics or set forth the elements of any common law tort. The mere use of legal terms, as here, is not enough where there is a complete lack of factual support for the claims. See, e.g., Migdal v. Rowe Price-Fleming Intern., Inc., 248 F.3d 321, 326 (4th Cir. 2001 ("Although a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations ... factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)... Plaintiffs must nudge their claims across

the line from conceivable to plausible or their complaint must be dismissed.").

Because the amended complaint in this case fails to allege facts against WNHP and Harrison that support a claim to relief that is plausible on its face, the amended complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

## RICO claim

Plaintiff's complaint alleges violations arising under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), and asserts that the defendants conspired ... to racketeer ... to cause damage to Plaintiff, his credit histories, his business and commerce, and his mental health." Am. Complaint pg. 109, 114. It is unclear which defendants the plaintiff intended to sue under RICO. Nonetheless, this claim is wholly conclusory and is subject to dismissal on that ground alone. Young v. Biggers, 938 F.2d 565 (5th Cir. 1991) ("Plaintiff must plead operative facts; bald allegations of a conspiracy are insufficient.")

## Claims brought under criminal statutes

Plaintiff seeks relief from various defendants pursuant to various criminal statutes including 18 U.S.C. § 1113 for murder, 18 U.S.C. § 1117 for conspiracy to murder, and 18 U.S.C. § 240

for criminal deprivation of rights under color of law, and for "criminal conspiracy". Plaintiff simply enjoys no private right of action under criminal statutes and these claims should be dismissed as well. See, e.g., Collins v. Palczewski, 841 F.Supp. 333, 340 (D.Nev. 1993) ("Long ago the courts of these United States established that 'criminal statutes cannot be enforced by civil actions.'").

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that all claims brought on behalf of the minor children be dismissed without prejudice, and that the minors be dismissed as plaintiffs in this action. It is further recommended that the moving defendants' motions to dismiss all claims against them be granted. If this recommendation is accepted, only Sheriff James Al Cannon will remain as a defendant in the case.

Respectfully submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina
August 10, 2009

42

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).